430

JAMES E. McPEAK *et al.*, Plaintiff-Appellees, v. RUSSELL D. THORELL *et al.*, Defendants-Appellants.

Third District   No. 3—85—0463

Opinion filed October 8, 1986.—Rehearing denied November 14, 1986.

Eugene R. Wedoff, of Jenner & Block, of Chicago, for appellants.

Stanley L. Tucker, of Hartzell, Glidden, Tucker, Neff & O'Neal, of Carthage, and James E. McPeak, of Macomb, *pro se*, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Defendant, Russell Thorell, was the general partner in a limited partnership formed to create a development consisting of two clusters of townhouses, each surrounding a courtyard. Thorell owned the land on which the development was to be located. The first cluster, Rye Court, consisted of 10 units and was constructed between 1968 and 1970. The second cluster, Heath Court, consisted of 12 units and was constructed between 1971 and 1973. In January 1969 Thorell drilled a water well to serve the development. The well was located approximately 50 to 75 feet from the edge of the development on other land owned by Thorell. Since the well was drilled, it has supplied water to the development and also to Thorell's farm.

Thorell completed construction of the sewer system presently serving the development in 1971. The first cluster of townhouses originally used septic systems to meet its sewage needs. The present sewer system consists of several parts. A "waste stabilization pond" or lagoon is located one-half mile west of the development. Waste water is pumped to the lagoon by an ejector station through several thousand feet of force line. Prior to construction of the sewer system, Thorell applied for a permit from the predecessor of the Illinois Environmental Protection Agency in the name of defendant, Emmett Utilities, Inc. (Emmett). This application was apparently made in Emmett's name because Thorell believed only a public utility corporation, certified by the Illinois Commerce Commission, could operate a sewage system. He was later informed that he was not required to form a utility corporation so he decided not to incorporate Emmett at that time. The Illinois EPA issued a construction and operation permit to Thorell in the name of "Emmett Utilities."

The development originally was intended to be limited to rental units; however, in 1971, Thorell decided to provide for the possible sale of the townhouses as condominiums. At that time he arranged condominium status only for the 12 newly constructed townhouses at Heath Court, leaving the 10 units at Rye Court as rental units. A declaration of condominium ownership, limited to Heath Court, and a plat of survey were prepared. No mention of the sewer and water system was made in either of these documents. The declaration did provide for easements over the condominium property on behalf of Emmett. The plat showed the easements burdening the development.

Until 1977 only one condominium unit was sold. Thorell charged the unit owner $35 per month as condominium fees which included the water and sewer services he was providing. During this time, the other Heath Court units continued as rentals. In 1977 Thorell amended the declaration of condominium to include Rye Court. The amended declaration covering all of the development was identical to the original. The amended plat outlined the entire development. Both documents continued to reflect the easements for sewer and water.

Fifteen units were sold between 1977 and 1980. Thorell evidently sold some units himself and others through real estate brokers. Each purchaser was given a copy of the amended declaration and plat prior to purchasing a unit. Each purchaser was informed that charges for water and sewer service would be part of their condominium fees. Thorell did not specifically tell each purchaser that he owned the water and sewer system; however, when asked who owned them, he would disclose they were his system. Thorell billed for the condominium fees on letterheads with the name of the development, "Stratford West," at the top of each sheet and the name of the limited partnership, "TCM Associates," on the bottom. Until the end of 1980, Thorell maintained the $35 monthly fees. Thereafter, the condominium fee was raised to $50 monthly. Any repairs made on the system were paid personally by Thorell and never by special assessments through defendant, Stratford West Association, Inc. (Association).

In 1982 Thorell decided to transfer management of the development from himself, as developer, to a board of managers elected by the unit owners, pursuant to the amended declaration. At a meeting of the unit owners, convened for this purpose, Thorell informed the unit owners that he would have to be compensated for the water and sewer services he was providing. Subsequently, the new board met on several occasions to discuss fees to be paid Thorell for these services. On one occasion Thorell brought up the possibility of selling the system to the development. Negotiations over the amount to be paid Thorell for water and sewer services continued throughout August and September 1982, but no agreement was made.

In October 1982, a meeting of certain unit owners was held to discuss a possible lawsuit against Thorell. In December 1982, Thorell received a letter from plaintiff, James McPeak, notifying him of a claim that he did not own the water and sewer system.

Apparently unable to reach an agreement with the board concerning the fees to be paid for the water and sewer service, Thorell incorporated Emmett and petitioned the Illinois Commerce Commission to set the rates for its service. Thereafter, McPeak filed the present

action seeking, *inter alia,* a court-ordered conveyance of the system from Emmett to the Association, a declaratory judgment defining ownership of the system, an injunction against violation of the antitying provisions of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*), imposition of a constructive trust for violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and an award of damages, costs and attorney fees. McPeak later amended the complaint to seek damages for breach of agency. The Association intervened and sought a declaratory judgment as to its rights in the water and sewer system based on fraud, conveyance and breach of agency. Pending the outcome of this action, Thorell's petition before the Illinois Commerce Commission has been stayed.

A bench trial was held and judgment was entered for plaintiffs on all pending counts with (1) a declaration that the water and sewer system is the property of Stratford West; (2) imposition of a corresponding easement on behalf of Stratford West; (3) entry of an injunction against tying arrangements, and (4) an award of attorney fees to the McPeaks.

The cardinal issue on appeal is the determination of ownership of the water and sewer system. Thorell argues the water and sewer system is real property which can only be conveyed by express written description, which is missing in the present case. McPeak insists that, even assuming the water and sewer facilities are fixtures and become real property, it is not true they can only be conveyed by express written description. He makes the analogy of the present situation with deeds for the conveyance of real property which are improved with buildings that are never mentioned in such deeds. The Association argues that section 4(g) of the Condominium Property Act (Ill. Rev. Stat. 1983, ch. 30, par. 304(g)), merely requires a "description of both the common and limited common elements," and not a legal "description."

■ This matter involves a water and sewer system consisting of a lagoon, an ejector station, a well and pump, and water and sewer lines. It is irrefutable that the lagoon is real property. Water and sewer mains are normally considered real property. (See *National Boulevard Bank of Chicago v. Citizens Utilities Co. of Illinois* (1982), 107 Ill. App. 3d 992, 438 N.E.2d 471.) The well, pump and ejector station may well be considered fixtures and as such are a form of real property. See *White Way Electric Sign & Maintenance Co. v. Chicago Title & Trust Co.* (1938), 368 Ill. 482, 14 N.E.2d 839.

■ In Illinois, real property can only be transferred by a writing

(*Skinner v. Francisco* (1949), 404 Ill. 356, 88 N.E.2d 867; *Weegens v. Karels* (1940), 374 Ill. 273, 29 N.E.2d 248), sufficiently describing the property (*Chicago & Alton R.R. Co. v. Langer* (1919), 288 Ill. 16, 123 N.E. 61). Having reviewed the Association's amended declaration and plat, we find both instruments devoid of sufficient language to sustain a finding that Thorell conveyed the system to the Association and, in fact, these instruments actually support Thorell's position that he did not convey the system. Section 4.04(b) of the amended declaration of condominium ownership and of easements, restrictions and covenants for Stratford West provides in pertinent part as follows:

> "4.04. EASEMENTS:
> \* \* \*
>
> (b) EASEMENTS FOR UTILITIES: McDonough Power Co-Operative, Central Illinois Public Service Company, Emmett Utilities, Inc., General Telephone Company of Illinois, and all other public utilities serving the property are hereby granted the right to install, lay, construct, operate, maintain, renew, repair or replace, conduits, cables, pipes and wires and other equipment into, over, under, along and on those portions of the property designated utility Easements on Exhibit A attached hereto, for the purpose of providing the property with utility services, together with the reasonable right of ingress to and egress from the property for said purpose. \* \* \*"

The amended declaration reveals that the easements for water and sewer use are no different than those designated for telephone, gas and electrical services by other utility companies. Furthermore, the plat of the development referred to in section 4.04 as Exhibit A clearly discloses water and sewer easements.

McPeak's argument fails because, as long as real property being conveyed by deed is sufficiently described, all buildings and appurtenances located thereon are likewise conveyed. In the instant case, the property on which the water and sewer system is located is not sufficiently described as being conveyed in any instrument. Similarly, we find no merit in the Association's reliance on section 4(g) of the Condominium Property Act, which provides:

> "Sec. 4. Declaration—Contents. The declaration shall set forth the following particulars:
> \* \* \*
>
> (g) A description of both the common and limited common elements, if any, indicating the manner of their assignment to a unit or units." (Ill. Rev. Stat. 1983, ch. 30, par. 304(g).)

For the same reasons as previously stated, nothing in the amended

declaration or plat of the development indicates any of Thorell's system to be a part of the Association's common or limited common elements. We hold that the trial court erred in interpreting the amended declaration of condominium ownership to include as part of the dedicated property the water and sewer system, and we find ownership of the system was retained by Thorell. We note that no claim has been made that the amounts which Emmett charged and received for water and sewer services were unreasonable and it appears that the reasonableness of its future charges will be subject to the oversight of the Illinois Commerce Commission.

The trial court's judgment also found (1) that Thorell committed constructive fraud for not expressly stating to prospective purchasers of his condominiums that he also owned the water and sewer system serving the development, and (2) that the sale of the condominiums with water and sewer services in place constituted an illegal tying arrangement in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—1 *et seq.*).

■■ ■ Under the constructive-fraud theory, Thorell would have had to have been a fiduciary to all prospective purchasers of units at the development at the time the purchase was being negotiated. We agree with Thorell that this theory can only apply in the context of a preexisting fiduciary duty, not one that would come into effect as a result of the transaction in question. Finally, we find no validity in the trial court's ruling that Thorell violated the antitying provision of the Illinois Antitrust Act. (See Ill. Rev. Stat. 1983, ch. 38, par. 60—3(4).) A tying arrangement is an agreement by a seller to sell one product based on the condition that the buyer also purchase a different product. (See *Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 423 N.E.2d 1230.) Our review of the record does not support such a conclusion.

For the foregoing reasons, we reverse the judgment of the circuit court of McDonough County.

Reversed.

BARRY and WOMBACHER, JJ., concur.