Lawrence J. **KORB**, Plaintiff,

v.

**RAYTHEON COMPANY**, Defendant.

Civ. A. No. 87–2992–WD.

United States District Court,
D. Massachusetts.

Feb. 15, 1989.

Jonathan Shapiro, Stern & Shapiro, David Hoffman, Marjorie Heins, Mass. Civil Liberties Union Foundation, Boston, Mass., for plaintiff.

Sandra L. Lynch, Kevin J. Fitzgerald, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER FOR REMAND

WOODLOCK, District Judge.

At issue here are competing claims between private actors for free speech rights. The plaintiff is a former executive of the Raytheon Company and the defendant is his quondam employer. Their dispute centers on the plaintiff's public criticism of defense spending policies, a matter in which the defendant, a major defense contractor, has a special interest.

The immediate question is whether the plaintiff's claim of interference with his free speech rights, originally brought in the Massachusetts state court under a state civil rights statute having significantly broader scope than any federally created cause of action, presents a federal question within the removal jurisdiction of this court established by 28 U.S.C. § 1441(b). If it does not, the plaintiff's motion for remand, which frames the question, must be granted.

### I.

Lawrence Korb, a Pennsylvania resident, originally brought this suit in the Middlesex Superior Court against the Raytheon Corporation, a Delaware corporation with its principal place of business in Massachusetts. The complaint alleged that Mr. Korb's employment by Raytheon was terminated wrongfully

> because of the exercise by plaintiff of his right of free speech protected *by the First Amendment to the United States Constitution* and by Article XVI of the Massachusetts Declaration of Rights, in violation of M.G.L. ch. 12, § 11I.

Complaint ¶ 1 (emphasis supplied).

Mr. Korb joined Raytheon in September 1985 as Vice President in charge of Washington Operations after serving as Assistant Secretary of Defense (Manpower, Installations and Logistics) from 1981 to 1985. As head of Raytheon's Washington, D.C., office, he was responsible for congressional relations and liaison with government departments including the Department of Defense.

Mr. Korb was also active with an organization known as the Committee for National Security ("CNS") whose basic purpose as described in the complaint "is to advance and protect United States national security while reducing the risk of nuclear war." In February 1986, CNS held a press conference, in which Mr. Korb and others participated, to announce an alternative defense budget. The alternative budget urged a scaling back of certain defense programs. Mr. Korb's status as a former senior Defense Department official critical of defense spending was prominently fea-

tured in press reports of the CNS alternative budget.

The reports of Mr. Korb's role in supporting the CNS budget prompted Defense Department and congressional figures to contact senior Raytheon officials and complain. In response to the complaints, on March 12, 1986, Raytheon terminated Mr. Korb's employment, telling him he would be kept on the Washington office payroll as a special advisor until August 31, 1986. After Mr. Korb's termination, certain Navy Department officials, while reiterating their objections to attacks upon the Administration's defense program by officials of contracting entities, contacted Raytheon to express the view that its termination of Mr. Korb was an overreaction to their objections.

On March 26, 1986, Raytheon offered Mr. Korb an alternative to termination of his employment in the form of an assignment in Philadelphia effective May 1, 1986. The assignment was to involve marketing energy services to the United States government; however, Mr. Korb would not be permitted to deal with the Defense Department.

Viewing the proposed alternative assignment to be a demotion designed to prevent him from speaking out on important matters of national public concern, and preferring termination to Philadelphia, Mr. Korb declined the alternative position and brought suit alleging the termination was improper.

## II.

As noted, Mr. Korb in his initial complaint contended his federal constitutional rights had been violated. In addition to the general allegation of paragraph 1 of the complaint, Mr. Korb alleged that he

was terminated by Raytheon because he had exercised his right of free speech guaranteed *by the First Amendment to the United States Constitution* and Article XVI of the Massachusetts Declaration of Rights.

Complaint ¶ 14 (emphasis supplied).

He asserted two claims for relief.

The first, parenthetically described as a "(Violation of Massachusetts Civil Rights Act, G.L. ch. 12, § 11I)," alleged in paragraph 15 of the complaint that

[b]y terminating plaintiff, Raytheon attempted to interfere and did interfere by threats, intimidation and coercion with the exercise and enjoyment of plaintiff's rights secured *by the Constitution and laws of the United States* and the Constitution and laws of the Commonwealth of Massachusetts in violation of the Massachusetts Civil Rights Act, M.G.L. ch. 12, § 11I.

(emphasis supplied).

The second, parenthetically described as "(Wrongful Termination)," alleged in paragraph 16 of the complaint that

[p]laintiff was wrongfully terminated by Raytheon in bad faith and for reasons that violated the public policy of the Commonwealth as embodied in Article XVI of the Massachusetts Declaration of Rights.

Raytheon petitioned for removal of the case from the state court asserting, *inter alia,* federal question jurisdiction. Mr. Korb thereupon amended his complaint pursuant to Fed.R.Civ.P. 15(a).

The thrust and the language of the claims in the amended complaint remained the same as that in the original complaint with one exception. The amended complaint carefully deleted all references to rights of free speech as guaranteed under the federal Constitution. Thus, in the amended complaint the first claim of relief as alleged in paragraph 15 asserts that

[b]y terminating plaintiff, Raytheon attempted to interfere and did interfere by threats, intimidation and coercion with the exercise and enjoyment of plaintiff's rights secured by the Constitution and laws of the Commonwealth of Massachusetts in violation of the Massachusetts Civil Rights Act, G.L. ch. 12, § 11I.

After the filing of the amended complaint, Raytheon moved in this court to dismiss the action asserting that Mr. Korb had failed to state a claim under the Massachusetts Civil Rights Act or the Massachusetts common law of wrongful termination.

Raytheon also contended that if either the Massachusetts Civil Rights Act or the Commonwealth's common law of wrongful termination were read to provide Mr. Korb with a cognizable claim, the application of those state created rights in the context of this case would be unconstitutional under the first and fourteenth amendments to the United States Constitution as violative of Raytheon's constitutional rights.

Mr. Korb responded to the removal petition and to Raytheon's motion to dismiss with a motion to remand on the ground that this case "is not an action founded on a claim or right arising under the Constitution, treaties or laws of the United States of which the district courts have original jurisdiction and is therefore not removable under 28 U.S.C. 1441(b)."

## III.

The narrow question before me has accurately been described as "[t]he most difficult single problem in determining whether federal jurisdiction exists [—that of] deciding when the relation of federal law to a case is such that the action may be said to be one 'arising under' that law." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3562, at 17–18 (2d ed. 1984).

Removal to the federal court is available to a diverse defendant such as Raytheon which finds itself sued in the state courts of its resident state only if the complaint as filed [1] raises a federal question.[2] The removal statute, 28 U.S.C. § 1441(b), provides:

Any civil action of which the district courts have original jurisdiction founded on a claim of right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The definition of the original federal question jurisdiction of the federal courts is at the center of the inquiry in this case. There is, however,

no "single, precise definition" of that concept; rather, "the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system."

*Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983)). The question is thus whether the Massachusetts Civil Rights Act ("MCRA") implicates in some way the original federal question jurisdiction of this court.

The First Circuit recently emerged from an extended encounter with the MCRA with an *en banc* decision in *Redgrave v.*

---

**1.** The amendment of the complaint after removal does not assist the plaintiff in defeating removal. The question whether removal jurisdiction is proper must be determined with reference to the pleadings at the time of removal. The plaintiff cannot amend his complaint so as to defeat jurisdiction. *See generally Saint Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938). As will appear, however, the plaintiff's effort to excise references to the federal constitution in his Massachusetts Civil Rights Claim was unnecessary because even when included such references do not make the claim a federal question. It bears noting for purposes of symmetry that Raytheon cannot transform this case into a federal question matter by asserting a defense based upon federal constitutional grounds. *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

**2.** Raytheon originally petitioned to remove under 28 U.S.C. § 1441(b) on grounds of both diversity and federal question jurisdiction. Raytheon later amended its petition for removal so as to base jurisdiction exclusively on the presence of a federal question. Raytheon does not indicate its rationale for amending the petition. However, the amendment appears to have been designed to tidy up the petition by excluding an extraneous and erroneous rationale. A defendant *cannot* remove on the basis of diversity if it is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b). Although Raytheon is a Delaware corporation, its principal place of business appears to be in Massachusetts. Raytheon is thus a citizen of both Delaware and Massachusetts. 28 U.S.C. § 1332(c).

*Boston Symphony Orchestra,* 855 F.2d 888 (1988), *cert. denied,* — U.S. ——, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989). That decision was preceded by, and had the benefit of, a scholarly analysis by Judge Keeton, *Redgrave v. Boston Symphony Orchestra,* 602 F.Supp. 1189 (D.Mass.1985) (subsequent history omitted), and a multiplicity of answers to certified questions by a fractionated Supreme Judicial Court, *Redgrave v. Boston Symphony Orchestra,* 399 Mass. 93, 502 N.E.2d 1375 (1987).[3] The encounter—which the United States Supreme Court chose to avoid by denying a writ of certiorari several days ago—impressed on the court of appeals the conclusion that "[t]he MCRA is an unusual statute...." *Redgrave,* 855 F.2d at 904.

The unusual character of the state statute resides in its scope. The MCRA "abolishes the state action requirement for constitutional claims of deprivation of rights." *Id.* In the first amendment context this is a fundamental departure from federal civil rights jurisprudence where the right of free speech

> traditionally has content only in relation to state action—the state must be neutral as to all expression and must not unreasonably restrain speech or expression. The right *is* to be free of state regulation, so that all private speech is formally on equal footing as a legal matter. In the traditional context, this means that various private actors can, without state interference, battle it out in the marketplace of ideas.

*Id.* (emphasis in original).

Last term the Supreme Court, in a case calling for construction of the parallel provision establishing jurisdiction over cases "arising under" the federal patent laws, reiterated and reaffirmed the test developed in *Franchise Tax Board* for federal question jurisdiction. *Christianson v. Colt Industries Operating Corp.,* — U.S. ——, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). As restated in *Christianson,* a district court's federal question jurisdiction

extends over "only those cases in which a well-pleaded complaint establishes *either* that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," ... in that "federal law is a necessary element of one of the well-pleaded ... claims."

108 S.Ct. at 2173 (quoting *Franchise Tax Board,* 463 U.S. at 27–28, 13, 103 S.Ct. at 2856, 2848) (emphasis supplied). Although the "cause of action" and the "substantial question of federal law" tests are interrelated, for purposes of clarity I shall discuss each "arising under" jurisdictional standard in turn.

### A

Three years after *Franchise Tax Board,* the Supreme Court held that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow,* 106 S.Ct. at 3235. In *Merrell Dow,* a theory of liability based upon a claimed violation of a federal Food and Drug Administration Act standard was found not to create federal question "arising under" jurisdiction in a state tort action where Congress had expressly provided no private federal remedy, because "the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 3235–36.

Emphasizing that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system," *id.* at 3233, the Court considered the jurisdictional issue within the "settled framework ... for evaluating whether a federal cause of action lies." *Id.* at 3234.

■ Informed as it is by notions of congressional allocation of federal judicial power, this framework provides a useful structure for organizing analysis of the

**3.** Unless otherwise indicated, all subsequent references to *Redgrave* are to the *en banc* opinion of the First Circuit, at 855 F.2d 888.

question here.[4] The factors identified as relevant in *Merrell Dow* are relevant in this case as well, and do not appear to implicate a federal cause of action when brought to bear upon free expression disputes under the MCRA between private parties such as those presented here.

First, the plaintiff is not part of a class for whose special benefit the first amendment protections were designed. The first amendment concerns itself with state—not private—action to limit freedom of expression. As the First Circuit noted in *Redgrave*, there can be no private violation of a first amendment right under the federal civil rights statute most closely analogous to the MCRA, 42 U.S.C. § 1985(3), because such a right "is by definition a right only against state interference." *Redgrave*, 855 F.2d at 904 n. 16 (quoting *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358–59, 77 L.Ed.2d 1049 (1983)).

Second, there is no indicium of federal constitutional intent to draw such private disputes over freedom of expression within the ambit of the first amendment. Indeed, the First Circuit has strongly suggested that to do so in this type of case would transgress the first amendment rights of the defendant. *See Redgrave*, 855 F.2d at 904–06 (private speech, even when intended to coerce exercise of another's speech, is protected from state action through adjudication).

Third, the federal constitutional purpose to provide protection against state action adversely affecting free expression is in no manner implicated by free expression disputes between private actors. To the contrary. "The courts, noting that free speech guarantees protect citizens against *governmental* restraints upon expression, have hesitated to permit governments to referee disputes between speakers lest such mediation, even when it flies the banner of 'protecting speech,' interfere with the very

type of interest it seeks to protect." *Id.* at 904 (emphasis in original).

Fourth, concern with free expression is a matter of both federal and state law. Indeed, as the First Circuit noted in *Redgrave*, the Massachusetts courts may well find broader rights of free expression in the Massachusetts constitutional scheme than have been read into the first amendment by federal courts. *Id.* at 910.

Thus, an analysis of the *Merrell Dow* factors makes it apparent that federal law does not create the cause of action under the MCRA, nor does the MCRA implicate a federal cause of action.

### B

The inquiry must now focus on the determination whether federal law is a necessary element of one of the plaintiff's well-pleaded claims in this case.

Raytheon appears to contend that although the Constitution or laws of the United States may not directly create a claim, Massachusetts' adoption of Mass. Gen.L. ch. 12, § 11*I* makes the first amendment a *standard* for interpreting state law. To what extent, then, do federal courts have § 1331 or § 1441 "arising under" jurisdiction over cases where the plaintiff does not state a federal cause of action, but raises a state law claim involving the possible interpretation or application of federal law as a standard for evaluating the state-based cause of action?

The Supreme Court has not been expansive in finding federal court jurisdiction over state-based causes of action, and the evaluative principles it has used would seem to deny jurisdiction in this case. In *Franchise Tax Board*, the Court reiterated the jurisdictional standard for state law claims incorporating federal law as follows:

> We have often held that a case "arose under" federal law where the vindication

---

4. The framework outlined in *Merrell Dow* embraces as factors the following findings: (1) the plaintiffs are not part of the class for whose special benefit the statute was passed; (2) the indicia of legislative intent reveal no congressional purpose to provide a private cause of action; (3) a federal cause of action would not further the underlying purposes of the legislative scheme; and (4) the respondents' cause of action is a subject traditionally relegated to state law. *Merrell Dow*, 106 S.Ct. at 3234.

of a right under state law necessarily turned on some construction of federal law.... Leading commentators have suggested that for purposes of § 1331 an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law."

463 U.S. at 9, 103 S.Ct. at 2846 (quoting Hart & Wechsler's *The Federal Courts and the Federal System* 889 (2d ed. 1973)).

The question to be considered is whether the state statute in the instant action, Mass.Gen.L. ch. 12, § 11*I*, is the type of law referred to in *Franchise Tax Board*. The focus is on whether § 11*I* "necessarily turn[s] on some construction of federal law," or "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law."

To be sure, the Massachusetts Civil Rights Act contains language referring to federal law. Section 11*I* provides:

Any person whose exercise or enjoyment of rights secured by *the constitution or laws of the United States* or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action....

Mass.Gen.L. ch. 12, § 11*I* (emphasis supplied).

■ However, I conclude that plaintiff's theory of private interference with his rights of free expression does not turn on some construction of federal constitutional law. Nor can it be said that in order to secure relief the plaintiff will be obliged to establish both the correctness and applicability of a proposition of federal law.[5]

Even when analyzed within the framework devised by Judge Friendly in *T.B.*

*Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964) (Friendly, J.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)—embraced by the dissenters in *Merrell Dow*, 106 S.Ct. at 3238–41 (Brennan, J., dissenting), and not disavowed by the *Merrell Dow* majority—the Massachusetts civil rights claim at issue here does not raise a federal question. "[T]here is not the slightest reason to think" that any important "federal interest" would be served by adjudicating disputes over freedom of expression between private parties. *See T.B. Harms*, 339 F.2d at 828.

Given what is at a minimum the coincidence of Massachusetts free expression law with federal first amendment jurisprudence, the plaintiff's complaint—even when referencing the United States Constitution—"discloses [no] need for determining the meaning or application of a federal provision." *Merrell Dow*, 106 S.Ct. at 3241 (Brennan, J., dissenting) (quoting *T.B. Harms*, 339 F.2d at 827).

There is, to be sure, a hotly contested question of state law at issue in free expression disputes under the Massachusetts Civil Rights Act. While the First Circuit *en banc* determined in August 1988 that "a majority [of the Massachusetts Supreme Judicial Court] has already declared that liability should not be imposed [in *Redgrave*] under state [civil rights] law," *Redgrave*, 855 F.2d at 912, six members of the seven member Supreme Judicial Court indicated just a few weeks ago that they apparently see the matter differently. Speaking through Chief Justice Hennessey in *Bally v. Northeastern University*, 403 Mass. 713, 532 N.E.2d 49 (1989), these six members observed, without any reference to the First Circuit's ultimate disposition of the *Redgrave* matter, that in the Supreme Judicial Court's own *Redgrave* decision, 399 Mass. at 95, 502 N.E.2d 1375, "we stated that the Boston Symphony Orchestra violated the [Civil Rights] Act because its cancellation of its contract with

5. Indeed, a very strong argument can be made that if propositions of federal constitutional law are correctly applied, the defendant's "private actor" defense to plaintiff's claims will dispose

of the case in a manner favorable to the defendant. Of course, as discussed *supra*, note 1, anticipated federal constitutional defenses cannot confer federal question jurisdiction.

Redgrave had the effect, intended or otherwise, desired or not, of coercing Redgrave not to exercise her First Amendment rights." 403 Mass. at 719, 532 N.E.2d 49.

■ But whether styled as a "First Amendment right," or more generally as a right of free expression, it is clear that claims based on freedom from private interference with the right to speak arise because of a peculiar state provision which is not bottomed on traditional concepts of federal jurisprudence. It appears, as Judge Keeton noted in connection with separate *Bally* litigation in which he remanded a state civil rights claim because it did not present a federal question, that under state court construction, "the Massachusetts Civil Rights Act has adopted, to some degree, a standard of federal law, but federal law provides neither the cause of action, the remedy, nor the substantive right." *Bally v. National Collegiate Athletic Association*, 707 F.Supp. 57, 60 (D.Mass.1988). An action brought under such a statute, in the private free expression context,[6] raises no federal question.

### IV.

It may well be, as the Supreme Judicial Court's recent decision in *Bally v. Northeastern* suggests, that as a matter of state law interpreted by state courts, the *Redgrave* claims involved a viable cause of action under the Massachusetts Civil Rights Act. Certainly the Supreme Judicial Court, and not the First Circuit—even sitting *en banc*—has the last word on that issue. But the *Redgrave*-type rights asserted by the plaintiff here have not found a welcome reception in the federal courts even when styled as matters of state statutory construction. In any event, it cannot be said that there is a need to determine a federal constitutional provision in resolving the claim presented here under the Massachusetts Civil Rights Act. The case there-

fore does not arise under federal law. Accordingly, the plaintiff's motion for remand is hereby ALLOWED.

---

6. Judge Keeton's decision in *Bally* may be read more broadly to suggest that a claim under the Massachusetts Civil Rights Act, without more, does not invoke federal question jurisdiction no matter what the context. While I am inclined to share that general view, the facts of this case require only that the specific context of private free expression claims under the MCRA be addressed here.