**HUNNEMAN REAL ESTATE CORP., d/b/a Hunneman & Company/Coldwell Banker; Carlson Real Estate Services, Inc./Better Homes & Gardens; and the Dewolfe Company, Inc., Plaintiffs,**

v.

**EASTERN MIDDLESEX ASSOCIATION OF REALTORS, INC.; Eastern Middlesex Multiple Listing Service, Inc.; and Bay State Multiple Listing Service, Inc., Defendants.**

Civ. A. No. 94–11358–RCL.

United States District Court, D. Massachusetts.

July 21, 1994.

Stephen A. Greenbaum, Greenbaum, Nagel, Fisher & Hamelburg, Boston, MA, for plaintiffs.

William L. Patton, David Martland, Colin J. Zick, Ropes & Gray, Boston, MA, G. Welch, Davis & Welch, Wakefield, MA, for defendants.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

The plaintiffs filed this action in Suffolk Superior Court on July 1, 1994. One of the defendants, Eastern Middlesex Association of Realtors, Inc. ("EMAR"), removed the action to this Court, and thereafter the plaintiffs moved to remand. For the reasons which follow, the Court will grant the plaintiffs' motion to remand this case to the Superior Court.

### 1. The Plaintiffs' Allegations

The plaintiffs allege that they brought this action

for the purpose of obtaining injunctive and monetary relief relative to certain monopolistic and unfair and deceptive conduct on the part of the defendants with respect to a new multiple listing service operated by the defendants. Specifically, the defendants have conspired to create a monopoly situation with respect to access to a multiple listing service, the lifeblood of the plaintiffs and most other realtors in the Commonwealth and elsewhere.

The plaintiffs claim that they are licensed real estate brokers operating multi-office residential real estate brokerage businesses. Defendant EMAR is a local board of realtors, constituted of individual real estate brokers and realtors, including the plaintiffs. EMAR members service Melrose, North Reading, Reading, Stoneham, Wakefield, Wilmington and Woburn. Defendant Eastern Middlesex Multiple Listing Service ("EMLS") is a Massachusetts corporation which operates a multiple listing service for EMAR. Defendant Bay State Multiple Listing Service, Inc. ("Bay State") is a Massachusetts corporation established for the purpose of providing local real estate boards in Massachusetts with a specific multiple listing service using software licensed by Moore Data Management Systems. Bay State is owned by the local Boards subscribing to its multiple listing service.

The plaintiffs allege that, in order for a company to use the label "realtor," the company must be a member of the Massachusetts Association of Realtors. In addition, every broker in a given company must be a member of the local Board of Realtors. In order to have access to a multiple listing service, a broker must belong to a local Board of Realtors.

The plaintiffs claim that they are and have been members of EMAR. As EMAR members, the plaintiffs have access to a multiple listing service provided by EMAR and EMLS, whereby the plaintiffs and others share information relative to residential real estate available for sale in the region covered

by EMAR. The plaintiffs allege that EMAR advised them that as of June 27, 1994, EMAR would be switching from the then-existing multiple listing service to a new system operated by Bay State. EMAR also told the plaintiffs that it would cease providing the plaintiffs and others with access to the old multiple listing service.

The complaint asserts that, given the market power of EMAR and Bay State, any member of EMAR who does not join the Bay State program will be effectively shut out of the information-sharing network and unable to compete in the real estate brokerage business. The plaintiffs contend that, as a practical matter, EMAR and Bay State are tying together the purchase of their two separate products such that a realtor or broker who does not purchase one will not be permitted to purchase the other. A further restraint on trade, according to the plaintiffs, is that the several local boards which have not subscribed to the Bay State system are currently unable to share information with and otherwise access the new system.

The plaintiffs contend that a primary purpose of EMAR's switching exclusively to the new system is to put the large realtors such as the plaintiffs at a financial disadvantage and to force them to subsidize this unnecessary and cost prohibitive system. The plaintiffs say that without the parallel multiple listing service currently in place, where there are reciprocal data sharing agreements between bordering areas, the plaintiffs and others will be effectively deprived of competing in certain real estate markets. According to the plaintiffs, EMAR has misrepresented that it would share information with other regions on a parallel basis.

The plaintiffs have asserted six counts.

Count I: Illegal tying arrangement. The plaintiffs have alleged that

Based upon their conduct as aforesaid, the defendants are engaged in an illegal tying arrangement pursuant to which the plaintiffs, in order to conduct business, must subscribe to the Bay State program as part of joining EMAR.

Count II: Unlawful monopoly. The plaintiffs have alleged that

Based upon their conduct as aforesaid, the defendants have created or are attempting to create, in restraint of trade or commerce, an illegal monopoly in material violation of the Massachusetts Anti–Trust Act, M.G.L. ch. 93.

Count III: Civil Conspiracy. The allegation is that, "Based upon their conduct as aforesaid, the defendants are engaged in a civil conspiracy against the plaintiff."

Count IV: Violation of Covenant of Good Faith and Fair Dealing. The complaint states that "the defendants have violated the covenant of good faith and fair dealing."

Count V: Misrepresentation. According to the plaintiffs,

The defendants made material misrepresentations to the plaintiff; to wit: that the defendants would share information on the various multiple listing services on a reciprocal basis and would maintain the existing system as a parallel system.

Count VI: Violation of M.G.L. c. 93A. The claim is that "the defendants have committed one or more unfair or deceptive acts or practices in the conduct of their business towards the plaintiff, in violation of M.G.L. ch. 93A, section 11."

## 2. *Discussion*

The purported basis for EMAR's removal of this action to this Court was described as follows:

The above-described civil action is within the original jurisdiction of this Court under the provisions of 28 U.S.C. § 1331 in that certain counts of the Complaint are federal in nature and this action may be removed to this Court by the defendant pursuant to the provisions of 28 U.S.C. § 1441.

The removal statute provides that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States ..." 28 U.S.C. § 1441(a).

The defendants claim that the plaintiffs' complaint "arises under" federal law pursuant to 28 U.S.C. § 1331. They make two

distinct arguments in support of their claim of federal jurisdiction: first, that Count I of the complaint, alleging a tying arrangement, is in fact a claim under the Sherman Act, 15 U.S.C., § 1; and second, that even if the tying claim were a state-law claim, there is federal jurisdiction because the claim necessarily turns on construction of a federal law.[1]

■ "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). "[T]he plaintiff is master of its own claim and can choose to keep its suit in state court if its well-pleaded complaint does not affirmatively rely on federal law." *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3rd Cir.1989). *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411–12, 57 L.Ed. 716 (1913). However, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 2852–53, 77 L.Ed.2d 420 (1983). "[A] complaint which appears to be grounded solely in state law actually may be federal in nature, and thus removable, if its true nature has been disguised by the plaintiff's artful pleading." *In re Agent Orange Product Liability Litigation*, 996 F.2d 1425, 1430 (2d Cir.1993), *cert. denied*, —— U.S. ——, ——, 114 S.Ct. 1125, 1126, 127 L.Ed.2d 434 (1994). "Artful pleading is when a plaintiff either 'characterize[s] his necessarily federal cause of action solely in state law terms' or 'fail[s] to make specific reference . . . to a source of federal law that clearly is applicable.'" *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 209, n. 1 (1st Cir.1987), *quoting* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3722, at 243, 276 (1985). But the "artful pleading" exception is narrow: "Because state and federal laws have many overlapping or even identical

remedies and because generally we respect a plaintiff's choice between state and federal forums, this exception to the well-pleaded complaint rule is necessarily a narrow one." *In re Agent Orange Litigation*, 996 F.2d at 1430–31.

■ On its face, the plaintiffs' complaint does not make any direct assertions of a violation of federal law. The Court rejects the defendants' contention that Count I, asserting a tying claim, is in fact an artful pleading of a Sherman Act violation. Restraints of trade are subject to "both state and national legislation." *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 217, n. 4 (1st Cir.1987), *quoting Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 495, 69 S.Ct. 684, 687, 93 L.Ed. 834 (1949). The defendants assert that tying is one of the most litigated claims under the Sherman Act, and that there are no reported Massachusetts cases dealing with allegations of tying arrangements. There is nothing in the Massachusetts Antitrust Act, M.G.L. c. 93, § 1, *et. seq.*, however, which would preclude the assertion of a tying claim. The fact that tying is often asserted under the Sherman Act does not mean that the plaintiffs are necessarily alleging a federal violation here. In many states, tying claims have been recognized under state antitrust statutes, which, like the Massachusetts Antitrust Act, are cognates of the Sherman Act. *See, e.g., Crown Homes, Inc. v. Landes*, 22 Cal.App. 4th 1273, 27 Cal.Rptr.2d 827 (1994); *McCormick v. Bradley*, 870 P.2d 599 (Colo.App. 1993); *State v. Hossan–Maxwell, Inc.*, 181 Conn. 655, 436 A.2d 284 (1980); *McPeak v. Thorell*, 148 Ill.App.3d 430, 101 Ill.Dec. 730, 499 N.E.2d 97 (1986); *Ray Gibbins Certified Welders, Inc. v. Gibbs*, 543 So.2d 68 (La.App. 1 Cir.1989); *Clough v. Adventist Health Systems, Inc*, 108 N.M. 801, 780 P.2d 627 (1989); *Pyramid Co. of Rockland v. Mautner*, 153 Misc.2d 458, 581 N.Y.S.2d 562 (N.Y.Sup. 1992); *Shaver v. Standard Oil Company*, 89 Ohio App.3d 52, 623 N.E.2d 602 (1993); *King*

---

1. The defendants also argue that the facts of the case support a finding that the "interstate commerce" element of a Sherman Act claim is satisfied in this case. If this case had been brought in federal court under the Sherman Act, it appears that there would have been federal jurisdiction. *See Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991). However, as discussed below, the plaintiffs have eschewed claims under the Sherman Act, as they had a right to do.

*City Realty v. Sunpace Corp.,* 291 Or. 573, 633 P.2d 784 (1981); *MJR Corporation v. B & B Vending Company,* 760 S.W.2d 4 (Ct. App.Tex.1988); *Boeing Company v. Sierracin Corporation,* 108 Wash.2d 38, 738 P.2d 665 (1987). This case, in state court, may yet be the first recorded Massachusetts tying case. There is always a first.

So, contrary to the defendants' claim, Count I does not "necessarily" state a federal cause of action, and federal law does not clearly apply. *See Patriot Cinema Corp.,* 834 F.2d at 209, n. 1. A contrary holding would fail to recognize the vitality of the Massachusetts Antitrust Act.[2]

■ The defendants' second purported basis for jurisdiction is that the plaintiffs' tying claim, even if it is based on state law, necessarily turns on the construction of a federal statute. The defendants rely on the Supreme Court's statement that a case arises under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983).[3] The Supreme Court later advised that "this statement must be read with caution ..." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). In making the jurisdictional inquiry, the Supreme Court has counselled that the lower courts use "prudence and restraint." *Id.* at 810, 106 S.Ct. at 3233. "Far from creating some kind of automatic test, *Franchise Tax Board* thus candidly recognized the need for careful judgments about the

exercise of federal judicial power in an area of uncertain jurisdiction." *Id.* at 814, 106 S.Ct. at 3235. Thus, the "construction-of-federal-law" language is a "narrow exception" to the general rule that a suit "arises under the law that creates the cause of action." *Oliver v. Trunkline Gas Co.,* 796 F.2d 86, 88 (5th Cir.1986), *quoting Franchise Tax Board,* 463 U.S. at 8–9, 103 S.Ct. at 2846, *in turn quoting American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).[4]

The defendants claim that the Massachusetts Antitrust Act provides a basis for federal jurisdiction. That statute provides, in relevant part: "This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable." M.G.L. c. 93, § 1.

With the Supreme Court's caveats in the *Merrell Dow* case in mind, the Court concludes that the above language in the Massachusetts Antitrust Act does not provide a basis for jurisdiction in the federal courts. The plaintiffs' cause of action under state law does not "necessarily turn on" a construction of federal law. Rather, federal law provides "guidance" for resolution of what remains a state cause of action. *Commonwealth v. Mass. CRINC,* 392 Mass. 79, 466 N.E.2d 792, 799 (1984). In addition, the Massachusetts statute provides a qualification which has yet to be construed by the Massachusetts courts: "insofar as practicable." This qualification provides room for deviation between federal antitrust law and Massachusetts antitrust law. It is quite possible that the Massachu-

---

**2.** The defendants do not argue that the Sherman Act preempts the Massachusetts Antitrust Act. "One corollary of the well-pleaded complaint rule developed in the case law ... is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). The First Circuit has stated that "federal antitrust law has never been held to completely preempt state antitrust law." *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 216, n. 4 (1st Cir.1987).

**3.** In *Franchise Tax Board,* the Supreme Court also formulated the inquiry as follows: a "case

might still 'arise under' the laws of the United States if a well-pleaded complaint established that [a party's] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848.

**4.** The First Circuit referred in dictum to the well-pleaded complaint rule in the context of state and federal antitrust claims in *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 217, n. 4 (1st Cir.1987). However, the defendants in that case did not claim that the resolution of the suit turned on federal law.

setts courts would depart from the Sherman Act in the elaboration of a tying claim.

While the Massachusetts statute does call for analysis of federal law, this fact alone does not provide a basis for jurisdiction. "The fact that part of the state statutory scheme requires some analysis of federal law ... is insufficient to invoke federal jurisdiction." *Hill v. Marston*, 13 F.3d 1548, 1550 (11th Cir.1994), *citing Moore v. Chesapeake & Ohio Ry. Co*, 291 U.S. 205, 214–15, 54 S.Ct. 402, 405–06, 78 L.Ed. 755 (1934). *See Merrell Dow*, 478 U.S. at 813, 106 S.Ct. at 3234 ("the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"). Allowing federal jurisdiction on the basis of the language of section 1 of c. 93 would effectively divest the state courts of jurisdiction of a state cause of action at the option of the defendant. In the Court's view, neither Congress, nor the Supreme Court, nor the Massachusetts General Court intended such an expansion of federal jurisdiction and corresponding diminution of state court jurisdiction. *See generally Merrell Dow*, 478 U.S. at 814–15, n. 12, 106 S.Ct. at 3235, n. 12.

In order for the plaintiffs to prevail, they do not have to prove or rely on any proposition of federal law. Unlike, for example, in *W. 14th St. Comm. Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188 (2nd Cir.1987), *cert. denied*, 484 U.S. 850, 871, 108 S.Ct. 151, 200, 98 L.Ed.2d 107, 151 (1987), where a state-law action to remove a cloud on title necessarily depended on provisions of the Condominium and Cooperative Abuse Relief Act, 15 U.S.C. §§ 3601–16; and unlike, for example, *Platzer v. Sloan–Kettering Institute*, 787 F.Supp. 360 (S.D.N.Y.1992), where state law third party beneficiary and breach of contract claims necessarily depended on an interpretation of the 1980 Bayh–Dole Act, 35 U.S.C. § 200 *et. seq.*, none of the elements of the plaintiffs' antitrust claims "necessarily depend" on federal law. In this case, "federal law provides neither the cause of action, the remedy, nor the substantive right." *Bally v. National Collegiate Athletic Ass'n.*, 707 F.Supp. 57, 60 (D.Mass.1988). *See Korb v. Raytheon Co.*, 707 F.Supp. 63, 70 (D.Mass.1989).

In short, the defendants have failed to meet their burden of showing that there is federal jurisdiction. *Bally*, 707 F.Supp. at 58, *quoting Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir.1985) (burden of establishing federal jurisdiction on party seeking removal).

Accordingly, this action shall be remanded to the Suffolk County Superior Court.

SO ORDERED.