Dr. Erich PLATZER, Dr. Karl Welte and Dr. Roland Mertelsmann, Plaintiffs,

v.

SLOAN–KETTERING INSTITUTE FOR CANCER RESEARCH, Defendant.

No. 91 Civ. 6578 (JSM).

United States District Court, S.D. New York.

March 4, 1992.

Martin R. Gold, Gold, Farrell & Marks, New York City, for plaintiffs.

Steven B. Rosenfeld, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Doctors Erich Platzer, Karl Welte and Roland Mertelsmann commenced this action to recover a share of the royalties stemming from a discovery they made while in the employment of Sloan–Kettering Institute for Cancer Research ("Sloan–Kettering). Sloan–Kettering now moves to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons contained herein, the motion to dismiss is granted in its entirety.

## FACTUAL BACKGROUND

Sloan–Kettering is a not-for-profit corporation engaged in scientific research largely funded by the federal government.

The three plaintiffs are former employees of Sloan Kettering. While employed by Sloan Kettering, the plaintiffs were part of a team of five research physicians responsible for conducting research in the area of colony stimulating factors. This research resulted in a discovery: the purification of granulocyte colony stimulating factor ("G–CSF"), a natural substance which stimulates the production of white blood cells. White blood cells are vital to the body's immune system, and are often destroyed during the course of chemotherapy, resulting in life-threatening infections. By bolstering the body's production of white blood cells, G–CSF enables cancer patients to tolerate higher dosages of chemotherapeutic drugs. It may also play a role in the treatment of AIDS.

It is not disputed that Sloan–Kettering owns the rights to all discoveries and inventions made by Sloan–Kettering employ-

ees. This assignment of rights to Sloan–Kettering is both required under federal law and under Sloan–Kettering's own "Policy on Inventions, Patents, and Technology Transfer" (the "Patent Policy").

What is disputed is whether and to what extent Sloan–Kettering is required to share royalties with the Plaintiffs.

Two agreements are relevant here. Under Sloan–Kettering's Patent Policy, Sloan–Kettering is obligated to share royalties with inventors of *patented* discoveries on a sliding scale basis.[1] The Patent Policy expressly disclaims any obligation to share royalties with employees where the Patent office has denied a patent application.[2] However, the Patent Policy does allow for discretionary awards to inventors of unpatented inventions.

The second relevant agreement is the funding agreement entered into between Sloan–Kettering and the federal government. This Institutional Patent Agreement Governing Grants and Awards between Sloan–Kettering and the Department of Health, Education, and Welfare (the "IPA") applies to inventions arising out of government-funded research which are or may be patentable. The IPA as originally drafted allowed for the sharing of royalties with inventors up to a maximum of 15% of gross royalties. However, the terms of the IPA were modified by the 1980 Bayh–Dole Act. (Act of Dec. 12, 1980, Pub.L. 96–517, § 6(a), 94 Stat. 3019, codified at 35 U.S.C. § 200 *et seq.*). The Bayh–Dole Act grants non-profit organizations exclusive title to inventions developed through federal funding, and allows them to freely license such inventions for profit so long as such profit is used to fund additional scientific re-search. The statute at issue provides in relevant part:

> Each funding agreement with a ... non-profit organization shall contain appropriate provisions to effectuate the following:
>
> (b) a requirement that the contractor share royalties with the inventor.

35 U.S.C. § 202(c)(7)(B).

Even though its patent application for G–CSF was denied, Sloan–Kettering exercised its discretion to share the royalties from the discovery with the team of researchers responsible for the discovery. In accordance with the sliding scale of payments called for under the Patent Policy, Sloan–Kettering distributed a 5% share of the gross royalties[3] to the five scientists on the granucolyte team. Accordingly, each plaintiff received $505,490. Sloan–Kettering also notified the researchers that they would receive additional payments, based on the same formula, from any future royalties from domestic and foreign sales.

The plaintiffs allege that Sloan–Kettering's obligation to share royalties with inventors is non-discretionary by virtue of 35 U.S.C. § 202(c)(7)(B). Furthermore, they argue that even though § 202(c)(7)(B) does not designate any particular percentage or royalties which an institution is required to pay to inventors, the legislative history makes it clear that Congress intended the share to be reasonable and greater than 15%.

The Complaint sets forth five causes of action, the first three of which are based on the statute.

> (i) Plaintiffs assert an implied private right of action under the Statute, alleging that Sloan–Kettering has breached its statutorily imposed obligation to

1. The Patent Policy provides:

 [the] annual gross proceeds from inventions or discoveries ... shall be shared with the inventor(s) according to the rate table below.

 | Annual Gross Proceeds | Inventor(s) Share % |
 | --- | --- |
 | $0–$50,000 | 25% |
 | $50,000–$150,000 | 15% |
 | $150,000–$300,000 | 10% |
 | Over $300,000 | 5% |

2. The Patent Policy states:

 In the event that a patent application is denied, whether or not [Sloan–Kettering] intends to continue prosecution of the patent application or appeal the adverse decision, [Sloan–Kettering] shall not be obligated to pay a share of royalties received after the date of denial to the inventor(s).

3. The gross royalty to Sloan–Kettering was an initial one-time balloon payment of $50 million from licensing the G–CSF to Amgen, Inc., a pharmaceutical company.

share royalties equally or equitably with inventors.

(ii) Plaintiffs claim that they are entitled to a larger share on the ground that they are third-party beneficiaries of the IPA which, by operation of law, contains the mandated clause to share royalties with inventors.

(iii) Plaintiffs claim that they are entitled to a larger share on the ground that the Statute created an implicit term of their employment agreement.

(iv) and (v) Plaintiffs assert two state law claims, one under a contract theory and the other under an unjust enrichment theory.

Sloan–Kettering moves to dismiss the first three claims on the ground that the Court lacks subject matter jurisdiction over the claims in that they do not "arise under" the laws of the United States as required by 28 U.S.C. §§ 1331 and 1338(a). Additionally, Sloan–Kettering seeks dismissal of these claims on the ground that they do not state a cause of action in that no private right of action exists under 35 U.S.C. § 202(c)(7)(B). Once these claims are dismissed, Sloan–Kettering argues that the Court should decline to exercise its supplemental jurisdiction over the state law claims, or in the alternative should dismiss these claims for also failing to state a claim for which relief can be granted.

## DISCUSSION

*The First Cause of Action*

For their first cause of action, Plaintiffs assert an implied private right of action under § 202(c)(7)(B), alleging that Sloan–Kettering breached its obligation to share royalties equitably with the inventors.

Sloan–Kettering seeks a dismissal of the first cause of action on the ground that this Court lacks subject matter jurisdiction and, in the alternative, on the ground that the first cause of action fails to state a claim for which relief may be granted.

■ Sloan–Kettering first argues that no private cause of action exists under § 202(c)(7)(B) and therefore the Court lacks subject matter jurisdiction and may not entertain the suit. This argument is clearly without merit. It is well settled that where a claim asserts an implied right of action under a statute, federal courts have the requisite federal jurisdiction to determine whether such a federal remedy exists. *Cherokee Express, Inc. v. Cherokee Express,* 924 F.2d 603 (6th Cir.1991); *Arroyo–Torres v. Ponce Federal Bank,* 918 F.2d 276 (1st Cir.1990); *Till v. Unifirst Federal Sav. & Loan Ass'n,* 653 F.2d 152, 155 n. 2 (5th Cir.1981). *See also Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[4]

Sloan–Kettering cites *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) for the proposition that where Congress has determined that there should be no private right of action for the violation of a federal statute, a claim based on that statute does not state a claim "arising under the Constitution, laws, or treaties of the United States" within the meaning of 28 U.S.C. § 1331. Sloan–Kettering reads this case too broadly. Specifically, Sloan–Kettering fails to take into consideration that

---

**4.** In *Bell v. Hood,* the Supreme Court stated in no uncertain terms that jurisdiction lies in actions that "seek recovery directly under the Constitution or laws of the United States." The Court was not bothered by the possibility that a private cause of action might not in fact exist. The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to

state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action for which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.
*Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

*Merrell Dow* did not involve a direct implied right of action, but rather involved a state law action which required interpretation of a federal statute. The importance in this distinction can not be overemphasized. The Supreme Court stated, "This case does not pose a [direct] federal question ... respondents do not allege that federal law creates any of the causes of action that they have asserted." *Merrell Dow*, 478 U.S. at 809, 106 S.Ct. at 3233. As such, its holding was limited to state law claims alleging violations of federal statutes: "A complaint alleging a violation of *a federal statute as an element of a state cause of action*, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow*, 478 U.S. at 817, 106 S.Ct. at 3237 (emphasis added).[5]

Because the first claim is premised on the assertion that an implied private right of action exists under § 202(c)(7)(B), this claim arises under the laws of the United States and subject matter jurisdiction exists.

 This conclusion, however, does not dispose of the issue. Rather, the private cause of action claim should nevertheless be dismissed pursuant to F.R.C.P. 12(b)(6) if the Court determines that the claim does not state a cause of action for which relief may be granted. Thus, if Congress did not intend for a private cause of action to exist under the statute, the claim will be dismissed.[6]

 In ascertaining whether a private cause of action exists under a federal statute, courts are to consider four factors: (1) whether plaintiff is part of the class for whose especial benefit the statute was passed; (2) whether the legislative history indicates a Congressional intent to confer a private right of action; (3) whether a federal cause of action would further the underlying purpose of the legislative scheme; and (4) whether the plaintiff's cause of action is a subject traditionally relegated to state law. *See Merrell Dow*, 478 U.S. at 810–11, 106 S.Ct. at 3233; *California v. Sierra Club*, 451 U.S. 287, 293, 101 S.Ct. 1775, 1778, 68 L.Ed.2d 101 (1981); *Cannon v. University of Chicago*, 441 U.S. 677, 689–709, 99 S.Ct. 1946, 1953–64, 60 L.Ed.2d 560 (1979); *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

The first factor to be considered is whether the plaintiff is a member of the class for whose "especial" benefit the statute was enacted. A review of the legislative history does not suggest that the Bayh–Dole Act was enacted for the benefit of research scientists. The Bayh–Dole Act was intended "to promote the utilization and commercialization of inventions made with Government support, to encourage the participation of smaller firms in the Government research and development process, and to promote increased cooperation and collaboration between the nonprofit and commercial sectors." 35 U.S.C. § 200 ("Policy and Objectives"). To such end, the intended beneficiaries of the

---

**5.** A few courts have interpreted *Merrell Dow* as standing for the proposition that subject matter jurisdiction is lacking for any claim that alleges a violation of a federal statute where no private right of action exists for that statute. *See, e.g., Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92 (S.D.N.Y.1987) ("A federal statute that does not create or imply private rights of action does not present a federal question pursuant to 28 U.S.C. § 1331"). These courts read *Merrell Dow* too broadly. Rather, *Merrell Dow*, by its holding, applies only to state law claims alleging violations of federal statutes. The cases relied on by Sloan–Kettering do not purport to hold otherwise. *See, e.g., Willy v. Coastal Corp.*, 855 F.2d 1160, 1168 (5th Cir.1988) (existence of a private cause of action is "a

necessary predicate to determining that the presence of a federal element in a state-created cause of action result[s] in that cause of action being one which ar[ises] under federal law"); *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279, 1283 (9th Cir.) ("Under *Merrell Dow*, if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial federal question' sufficient to confer federal-question jurisdiction."), *cert. denied*, 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987).

**6.** This two part approach to subject matter jurisdiction and claim sufficiency for implied right of actions is consistent with the approach suggested in *Bell v. Hood. See* Note 4 *supra.*

Bayh–Dole Act are the institutions themselves and the government.

Furthermore, the language of § 202(c)(7)(B) typifies the statutory scheme in which federal courts have routinely refused to find an implied right of action. The statute here serves as a directive to organizations that receive federal funding. As such, the language is similar to the statute at issue in *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). In *Coutu*, the Supreme Court declined to infer a private cause of action to employees under the Davis–Bacon Act, which obligated federal contractors to pay certain wages to employees.[7] The Court concluded that even though the language of the statute indicated an intent to benefit the class to which the plaintiff belonged, the language failed to indicate that "Congress intended that [the statute] be enforced through private litigation." Because "Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead ... framed the statute simply as a general prohibition or a command to a federal agency," the Court refused to infer a private remedy. *Coutu*, 450 U.S. at 772, 101 S.Ct. at 1462 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690–92, 99 S.Ct. 1946, 1954–55, 60 L.Ed.2d 560 (1979)). *See also Rapid Transit Advocates v. Southern California Rapid Transit Dist.*, 752 F.2d 373, 377 (9th Cir.1985) (no private right of action under a statute which focused on spending directives and conditions for government grants); *Osborn v. American Ass'n of Retired Persons*, 660 F.2d 740, 745 (9th Cir.1981).

■ Similarly, the legislative history does not indicate and intent to create a private right of action. Indeed, the legislative history is completely silent with regard to a private cause of action. As such, it is safe to assume that Congress did not intend for a private right of action to exist. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) (where legislative history is silent, "[t]he question whether Congress ... intended to create a private right of action, has been definitely answered in the negative"). This conclusion is supported by the fact that elsewhere in the patent statutes, Congress did explicitly grant private causes of action. *See, e.g.*, 35 U.S.C. § 281 (1988) (a "patentee shall have remedy by civil action for infringement of his patent"); 35 U.S.C. §§ 141–145 (1988) (applicant whose patent is rejected by the Patent Office on appeal may pursue his claim in the federal courts). The fact that elsewhere in the patent statutes private rights were expressly provided indicates that "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross*, 442 U.S. at 573, 99 S.Ct. at 2487. Likewise, that such a right was not created under § 202(c)(7)(B) suggests that no right was intended.

Nor would implication of such a right further the purpose of the statute. The Bayh–Dole Act was enacted to foster commercial development of government funded research. As such, the statute requires that royalties be funneled back into scientific research. See H.R.Rep. No. 1307, 96th Cong., 2d Sess., pt. 1, at 5, 2 (1980), reprinted in 1980 U.S.Code Cong. & Admin.News 6460, 6464, 6461. A private right of action allowing an inventor to demand 50% of the royalties, as is the case here, would clearly frustrate this purpose rather than further it.

In light of the foregoing, the Court concludes that no private cause of action exists under § 202(c)(7)(B) of the Bayh–Dole Act. Accordingly, the first cause of action asserting an implied right must be dismissed for failing to state a claim for which relief can be granted.

---

7. 40 U.S.C. § 276a(a) of the Davis–Bacon Act provided that the advertised specifications for every federal contract in excess of $2000 "for construction, alteration, and/or repair ... of public buildings or public works of the United States ... shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing."

*The Second and Third Causes of Action*

The Plaintiff's second and third claims are brought under third-party beneficiary and breach of contract theories. Both claims require interpretation of § 202(c)(7)(B). As with the first cause of action, Sloan–Kettering argues that dismissal is warranted because the Court lacks subject matter jurisdiction and because the cause of action fails to state a claim for which relief may be granted. These arguments will be considered in turn.

Sloan–Kettering cites *Merrell Dow* to support its position that the Court lacks subject matter jurisdiction for state-law claims alleging federal violations where no private right of action exists for the underlying federal statute. Specifically, Sloan–Kettering asserts that the second and third claims clearly fall under the category of cases considered in *Merrell Dow.* "[While] the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action … [we have] also noted that a case may arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. at 3232 (quoting *Franchise Tax Board v. Const. Laborers Vac. Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983)).

■ As the Defendant reads *Merrell Dow,* the absence of a private right of action for an underlying federal statute where a state-law claim is asserted is dispositive. Sloan–Kettering argues that once the court has concluded that no private cause of action exists for the underlying federal violation, the court may not hear the claim unless independent jurisdictional grounds exist.

Once again, Sloan–Kettering reads *Merrell Dow* too broadly. Specifically, Sloan–Kettering attempts to extend the holding of *Merrell Dow,* which involved a state law claim in which the alleged federal violation was peripheral,[8] to cases where the alleged violation is essential to the existence of the state-law claim.

That *Merrell Dow*'s reach should not be so extended is suggested in the language of the opinion itself. The Court left undisturbed the holding of *Franchise Tax Board,* that federal question jurisdiction is "appropriate when 'it appears that some substantial, disputed question of federal law is a necessary element of the well-pleaded state claims.'" *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. at 3234 (quoting *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848). Leaving intact "arising under" jurisdiction to determine substantial questions of federal law, the Court held that the *"mere presence* of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. at 3234 (emphasis added). As such, the Court emphasized the need to evaluate "the nature of the federal issue, *Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3235 n. 12, and the "need for careful judgments about the exercise of federal judicial power in … area[s] of uncertain jurisdiction." *Merrell Dow,* 478 U.S. at 814, 106 S.Ct. at 3235.[9]

Thus, even where no private right of action exists for the underlying federal issue, if the nature of the federal issue is sufficiently substantial, subject matter jurisdiction may still exist. *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188 (2d Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107

---

**8.** *Merrell Dow* involved a products liability claim that children were born with deformities as a result of the injection of Bendectin. Of the six counts in the complaint, only one implicated federal law. That claim asserted, in part, that the drug was misbranded in violation of the Federal Food, Drug and Cosmetic Act ("FDCA") and that the violation of the FDCA constituted "a rebuttable presumption of negligence." *Merrell Dow,* 478 U.S. at 805–06, 106 S.Ct. at 3230–31.

**9.** Emphasizing the nature of the federal issue within the state-law claim, the Court went on to cite with approval *Textile Workers Union v. Lincoln Mills of Alabama,* 353 U.S. 448, 470, 77 S.Ct. 912, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting) (defining the inquiry as "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote"). *Merrell Dow,* 478 U.S. at 813 n. 11, 106 S.Ct. at 3234 n. 11.

(1987).[10] *See also Milan Express Co. v. Western Surety*, 886 F.2d 783 (6th Cir. 1989) (distinguishing *Merrell Dow* and holding that the lack of a private right of action did not preclude a finding that subject matter jurisdiction existed); *Smith v. Industrial Valley Title Insurance Co.*, No. 90–2132, 1990 WL 112077 (E.D.Pa. Aug. 2, 1990) (LEXIS, Genfed library, Dist. file) (interpreting the "delphic" *Merrell Dow* opinion as being limited to cases where the federal element is "merely present" rather than substantial); *New York v. Rapgal Assocs.*, 703 F.Supp. 284 (S.D.N.Y.1989) (finding that the existence of a private right was immaterial where claims were derived from federal law and resolution of the dispute turned on construction of federal law).

■ Here, the federal issues in the Plaintiffs' second and third claims are sufficiently substantial to confer "arising under" jurisdiction.[11] Indeed, the federal issue is essential to Plaintiffs' breach of contract and third-party beneficiary claims. As such, a substantial federal issue exists and subject matter jurisdiction is proper.

■ Sloan–Kettering next argues that dismissal of the second and third causes of action is warranted on the ground that these causes of action fail to state a claim for which relief can be granted.

In determining whether Plaintiffs' have stated a claim upon which relief may be granted, the Court must first turn to the language of the statute. The language of § 202(c)(7)(B) is clear:

> Each funding agreement with a ... non-profit organization shall contain appropriate provisions to effectuate the following ... (7)(B) a requirement that the contractor share royalties with the inventor.

35 U.S.C. § 202(c)(7)(B).

The Plaintiffs' second and third claims are premised on the argument that § 202(c)(7)(B) contains an implicit requirement that institutions share a specific percentage of their royalties with inventors and scientists. However, nothing in the language suggests that the share should be a specified ratio. Nor does the definition of "share" suggest that a particular ratio was intended. In common usage, the unmodified verb "share" simply means "to have a share; take part." New Webster's Dictionary of the English Language 2087 (3rd ed. 1981). Black's Law Dictionary (5th ed. 1979) specifically contrasts the unmodified word "share," which it defines as "[t]o partake; enjoy with others, have a portion of," with the term "share and share alike," which is defined as referring to "equal shares or proportions." In short, the plain language of the statute does not yield the interpretation that the Plaintiffs ask us to

---

**10.** The language used by the Second Circuit to distinguish *Merrell Dow* is equally applicable here:

> [A]ssuming that plaintiffs have no private right of action under [the federal statute], we conclude that the federal element in the plaintiff's state cause of action would still be sufficiently substantial to confer arising under jurisdiction. In *Merrell Dow* the federal statute was merely incorporated by reference as a standard of conduct in a state negligence claim. Here, the situation is quite different. In construing the [the federal statute in question] in a state cause of action, the federal issue is decisive because upon the Act's construction the vindication of rights and definition of relationships created by federal law depends.... In light of this qualitative difference, the federal ingredient in plaintiffs' complaint in this case is sufficiently substantial to confer the arising under jurisdiction.

*West 14th Street Commercial Corp.*, 815 F.2d at 196 (citations omitted).

**11.** In reaching this conclusion, the Court is doing no more than following the admonition of Justice Cardozo in *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Discussing the boundaries of arising under jurisdiction, Justice Cardozo stated:

> What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.... a selective process which picks the substantial causes out of the web and lays the other ones aside.... To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in the maze if we put that compass by.

*Gully v. First Nat'l Bank*, 299 U.S. at 117–18, 57 S.Ct. at 99–100.

make, that a particular ratio of sharing was intended.

Nor does the legislative history suggest a ratio for sharing. Congress enacted the Bayh–Dole Act "to promote the utilization and commercialization of inventions made with government support." 35 U.S.C. § 200 ("Policy and Objective" of Bayh–Dole Act). To further this aim, the Bayh–Dole Act provides that non-profit institutions receiving government funding must reinvest royalties from research into additional research. 35 U.S.C. § 202(c)(7)(C). Clearly Congress' concern was with the reinvesting of funds to further research, not with furthering the private interests of individual inventors. The provision that non-profit institutions share royalties was included merely to ensure that inventors were provided with an adequate incentive to engage in scientific research. Furthermore, that any sharing ratio should be left to the supply and demand of the market is suggested by Congress' refusal to determine a particular share: "It is not intended that Federal agencies establish sharing ratios." S.Rep. No. 480, 96th Cong., 1st Sess. at 33 (1979).

The regulations established by the executive agency charged with administering § 202 support the conclusion that no particular share or minimum share was intended by Congress. Specifically, the agency has expressly declined to establish any "minimum sharing formula" on the ground that to do so would be "inconsistent with the legislative intent as manifest on p. 33 of the Senate Report 96–480." 47 Fed.Ref. 7556 at 9, Feb. 19, 1982. The agency has noted that "[t]he intent is that non-profit organizations share ... in accordance with their usual policies."

In sum, a review of the language of the statute, its legislative history, and subsequent agency regulations fails to suggest that Congress intended that institutions follow a federally imposed sharing ratio or minimum share. As plaintiff's second and third claims are premised on such a minimum share, the Court must conclude that these actions fail to state a claim for which relief can be granted. Accordingly, the second and third claims are dismissed.

*The State–Law Claims*

With the federal claims dismissed, the only remaining claims are state law claims under contract and unjust enrichment theories. In accordance with 28 U.S.C. § 1367(c)(3), the Court declines to exercise its supplemental jurisdiction over plaintiff's remaining claims.

Accordingly, the complaint is dismissed in its entirety.

SO ORDERED.