John B. **FENN**, Plaintiff,

v.

**YALE UNIVERSITY**, Defendant.

Nos. **Civ.A.3:96 CV 736, Civ.A.3:96 CV 990, Civ.A.3:96 CV 1647(CFD).**

United States District Court,
D. Connecticut.

Sept. 29, 2004.

See also 283 F.Supp.2d 615.

---

134

Carole W. Briggs, Briggs Law Firm, P. C., Marlborough, CT, Hubert J. Santos, Santos & Seeley, Hartford, CT, Lana S. Shiferman, Goodwin Procter LLP, Boston, MA, John J. O'Brien, Jr., Law Offices of Peck & O'Brien, Wethersfield, CT, Hope C. Seeley, Santos & Seeley, Hartford, CT, Richard I. Samuel, Goodwin Procter LLP, Roseland, NJ, Brenda R. Sharton, Goodwin Procter LLP, Boston, MA, for Plaintiff.

Jonathan M. Freiman, Wiggin & Dana, New Haven, CT, Sidney R. Bresnick, Cohen, Pontani, Lieberman & Pavane, New York City, William J. Doyle, Wiggin & Dana, New Haven, CT, for Defendant.

### RULING ON MOTION TO DISMISS COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

DRONEY, District Judge.

Pending is plaintiff John B. Fenn's ("Dr. Fenn" or "Professor Fenn") Motion to Dismiss defendant Yale University's ("Yale") counterclaims and affirmative defenses

[Doc. # 438], on the basis of lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

## I. Background

Dr. Fenn brought this action against Yale alleging conversion, theft, tortious interference with business relations, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a, *et seq.*, regarding a chemical mass spectometry invention and the patent for that invention, which issued to Dr. Fenn as United States Patent No. 5,130,-538 (" '538 patent") on July 14, 1992. Yale asserted counterclaims against Dr. Fenn, seeking an accounting and assignment of the '538 patent, as well as damages for breach of contract and fiduciary duty, fraud, negligent misrepresentation, conversion, theft, and unjust enrichment.

Following a bench trial, this Court issued a Memorandum of Decision on August 19, 2003 [Doc. # 430].[1] The Court concluded that Dr. Fenn failed to prove his claims against Yale and that Yale prevailed on its breach of contract, breach of fiduciary duty, and fraud claims. In addition, the Court found that significant issues remained regarding Yale's claims of conversion and civil theft and ordered further briefing on those claims, as well as damages.

Dr. Fenn has moved to dismiss, posttrial, Yale's counterclaims and affirmative defenses on the basis of lack of subject matter jurisdiction.

## II. Motion to Dismiss Standard

■ The Federal Rules of Civil Procedure limit the defenses which may be

---

1. In its August 2003 Memorandum of Decision, the Court indicated that jurisdiction was based upon diversity of the parties and an amount in controversy exceeding $75,000, pursuant to 28 U.S.C. § 1332(a)(1).

raised by a party post-trial. Most defenses, such as lack of personal jurisdiction, improper venue, insufficiency of process, or failure to state a claim upon which relief may be granted, must be raised by motion, in responsive pleadings or at the trial on the merits; if not so raised, the defenses are waived. *See* Fed.R.Civ.P. 12(h)(1)-(2). The exception to this general rule is the defense of lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(h)(3) requires that *"[w]henever* it appears by the suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action" (emphasis added). *See also Kontrick v. Ryan,* 540 U.S. 443, 124 S.Ct. 906, 915, 157 L.Ed.2d 867 (2004) ("A litigant generally may raise a court's lack of subject matter jurisdiction at any time in the same civil action...."); *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 76–77, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("if, at the end of the day and case, a *jurisdictional* defect remains uncured, the judgment must be vacated"). Dr. Fenn's motion to dismiss for lack of subject matter jurisdiction still is timely, even though a trial already has occurred.

■ A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Under that rule, a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996); *see also Carlson v. Principal Fin. Group,* 320 F.3d 301, 306 (2d Cir. 2003) ("[I]n order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws

of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous.")

■ A district court evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir.1993) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 (2d Cir.1989)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The complaint is construed "broadly and liberally ... but 'argumentative inferences favorable to the pleader will not be drawn.'" *Cole v. Olympus Health Care Ctr.,* 2004 WL 838043, *3, 2004 U.S. Dist. LEXIS 6587, *10–11 (D.Conn. Mar. 8, 2004) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1350, 218–219 (1990 & Supp.1993)). Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction." *Matos v. United States Dept. of Housing & Urban Dev.,* 995 F.Supp. 48, 49 (D.Conn.1997) (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). The district court also "may inquire, by affidavits or otherwise, into the facts as they exist." *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009; *see also Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976).[2]

## III. Discussion

Dr. Fenn argues that Yale's counterclaims and affirmative defenses require

---

2. In accordance with this principle, the Court has relied upon exhibits submitted in both parties' 12(b)(1) papers, as well as evidence introduced at the trial on the merits, in support of this ruling. The findings of fact herein supplement those contained in the Court's August 19, 2003 Memorandum of Decision [Doc. # 430].

the Court to make a determination regarding ownership rights with respect to the '538 patent and that such judicial determination is prohibited by the Bayh–Dole University and Small Business Patent Procedures Act, 35 U.S.C. § 200 *et seq.* ("Bayh–Dole Act" or "Act"). Thus, Dr. Fenn argues, Yale's counterclaims and affirmative defenses are preempted by the Bayh–Dole Act.

### A. Bayh–Dole Act

The Bayh–Dole Act, enacted December 12, 1980, sets forth rights and responsibilities of various entities relating to inventions resulting from federally funded research. The statute establishes rules for the federal government, for nonprofit or small-business grantee contractors funded by the government, and for inventors who work for those contractors. Under the Act, nonprofit organizations may retain exclusive title to inventions developed with federal funding, and may freely license such inventions, so long as all resulting profits are used to fund additional scientific research and development. *See* 35 U.S.C. § 202(a); *see also* 37 C.F.R. § 401.14(b) ("[t]he Contractor may retain the entire right, title, and interest throughout the world to each subject invention subject to the provisions of this clause and 35 U.S.C. § 203").

Procedurally, the Act requires all institutions who have entered into research funding contracts with a federal agency to "disclose each subject invention to the Federal agency within a reasonable time after it becomes known to contractor personnel responsible for the administration of patent matters." 35 U.S.C. § 202(c)(1). In addition, the institution must affirm its intent to retain title to any such inventions by making a "written election within two years after disclosure to the Federal agency...." 35 U.S.C. § 202(c)(2). If a contracting institution elects to retain title to a subject invention, the individual inventor (who typically is employed by the institution) has no further rights. Contractors are required, however, to share royalties with inventors. *See* 35 U.S.C. § 202(c)(7)(B).

Should a contractor fail to disclose the existence of, or elect not to retain title to, a subject invention, the federal government may receive title. *See* 35 U.S.C. § 202(c)(1)-(2). Alternatively, "the Federal agency may consider and after consultation with the contractor grant requests for retention of rights by the inventor...." 35 U.S.C. § 202(d). After such a request is acted upon, the agency's determination may be appealed by filing a petition in the United States Court of Federal Claims. 35 U.S.C. § 203(2); *see also S. Research Inst. v. Griffin Corp.,* 938 F.2d 1249, 1255 (11th Cir.1991) (stating that judicial review of an agency's determination made under 35 U.S.C. § 202 is unavailable under the Administrative Procedures Act, 5 U.S.C. § 701(a), because § 202 fails to provide any "statutory guidance to meaningfully assess that [agency decision]").

■ The Bayh–Dole Act does not provide for a private cause of action to enforce its provisions. *See id.* (citing *Gen–Probe Inc. v. Ctr. for Neurologic Study,* 853 F.Supp. 1215, 1217–18 (S.D.Cal.1993); *see also Platzer v. Sloan–Kettering Inst. for Cancer Research,* 787 F.Supp. 360, 364–65 (S.D.N.Y.1992); *Ciba–Geigy Corp. v. Alza Corp.,* 804 F.Supp. 614, 629 (D.N.J.1992)). The district courts in those cases denied that a private right of action existed under which the parties could sue *directly. See Gen–Probe,* 853 F.Supp. at 1217 (holding that defendant lacked standing to seek a constructive trust over two subject inventions, when the claim of right was based solely on the terms of § 202); *Platzer,* 787 F.Supp. at 365 (denying plaintiff's claim

that Bayh–Dole Act contained an implied private right of action to enforce the sharing of royalties between contracting institutions and inventors); *Ciba–Geigy*, 804 F.Supp. at 628–29 (finding that a competing private manufacturer lacked standing to challenge license agreement awarded to plaintiff under terms of Bayh–Dole Act, since the Act provides no private right of action).

The fact that individuals may not bring suit directly under the Bayh–Dole Act does not mean, however, that federal agencies assume exclusive jurisdiction over all disputes relating to subject inventions. In *Platzer*, the district court denied that a private right of action existed under the Bayh–Dole Act, yet still held that the plaintiff's related third-party beneficiary and breach of contract claims raised federal issues "sufficiently substantial to confer 'arising under' jurisdiction [pursuant to 28 U.S.C. §§ 1331, 1338(a) ]." *Platzer*, 787 F.Supp. at 367.

■ In the instant case, Yale has counterclaimed for violations of Connecticut law, and argues that valid subject matter jurisdiction exists due to the diversity of the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a)(1). Yale has not based jurisdiction over its counterclaims upon the provisions of the Bayh–Dole Act. The Court therefore determines that the Bayh–Dole Act's absence of a private right of action, taken alone, is inapposite and does not preclude Yale's counterclaims.

### B. NIH Determination

■ Dr. Fenn contends that on April 2, 1993, the NIH determined that he was the rightful owner of the '538 patent and granted his request to retain rights to the invention.

As discussed previously, the Bayh–Dole Act imposes two prerequisites before a federal agency may grant an inventor's request to retain rights to a subject invention: the contractor must elect not to retain title to the invention, and the federal agency is directed to consult with the contractor before deciding whether to grant the request. *See* 35 U.S.C. § 202(d). Dr. Fenn argues that NIH's agreement to accept a license for the '538 patent from him demonstrates that the NIH determined that Dr. Fenn was the owner of the '538 patent. He further argues that the NIH would not have accepted the license if the NIH had reason to believe that Dr. Fenn was not the rightful owner. In support of this argument, Dr. Fenn points to a letter that he wrote to the NIH on March 25, 1993, which was introduced at trial as plaintiff's exhibit 103.[3]

The March 25, 1993 letter and April 2, 1993 NIH signature are insufficient to establish that the NIH made a determination under 35 U.S.C. § 202(d) that Dr. Fenn retains rights in the '538 patent. The sole subject of the clause at the bottom of the letter is the license to the NIH, and its language carries no explicit or implicit ref-

---

**3.** The body of Dr. Fenn's letter provided further information to the NIH as to when Dr. Fenn disclosed the invention to Yale, the research contributions made by Dr. Fenn's co-inventors, and the abstracts describing the invention that were distributed by Dr. Fenn at a June 1988 scientific conference. Dr. Fenn also noted that a License to the United States Government form for the '538 patent was enclosed with his letter. To verify receipt of the documents, Dr. Fenn included a clause at the bottom of the letter, which he requested that the NIH sign and return for his records. That clause read, "I have received this letter and its accompanying license form. To my knowledge all the associated obligations of Yale and the inventor to the U.S. Government have now been met." Howard P. Jenerick of the NIH signed below this statement on April 2, 1993.

erence to the ownership of the rights to the '538 patent.[4]

Moreover, there is no indication that Yale gave up its right to retain title to the '538 patent. On the contrary, Yale expressed its intention to elect title to the '538 patent in all its correspondence with the NIH. Yale initially disclosed the mass spectrometry invention that is the subject of the '538 patent in a letter to the NIH dated May 17, 1989.[5] That letter concluded, "Yale is attempting to commercially license this technology." The NIH responded to Yale's letter on March 1, 1993.[6] At that time, the agency sought to clarify whether Yale's statement was "intended as a notice to this Agency of Yale's formal election of title under 35 U.S.C. § 202." The NIH further directed Yale to provide its "current intention regarding title rights. Specifically, does Yale wish to retain them or do you wish Professor Fenn to retain title[?]"

Robert Bickerton of Yale's Office of Cooperative Research responded to the NIH on March 17, 1993.[7] Bickerton wrote, "After discussion at Yale, we have determined that Yale should retain title to the invention and that Professor Fenn should assign the ['538] patent to Yale." Bickerton continued:

As the foregoing implies, we understand that title to NIH-funded inventions "does not flow to the inventor by default" and we did not and do not propose to petition the NIH to permit us to assign the invention to Professor Fenn. Rather, Yale wishes to elect title to this invention.

Against the backdrop of this correspondence, it is clear that Yale repeatedly asserted its intention to retain title to the '538 patent and that such intention was communicated to the NIH. Nor is there any indication that Dr. Fenn formally requested that the NIH make a determination under § 202(d) allowing him to retain rights to the '538 patent.[8] Thus, neither of the two prerequisites necessary under the Bayh–Dole Act for an inventor to retain rights in his invention—a grantee's refusal to pursue rights in the subject invention, and an inventor's subsequent request that such rights be awarded to him—was fulfilled in the instant case. Nor can the NIH's mailing of a return receipt to Dr. Fenn, verifying that the agency had received the license form he enclosed, be read as implying a grant of ownership. The Court finds that the NIH never made any determination under § 202(d) that Dr. Fenn retains the rights to the '538 patent.

---

4. On the license form accompanying Dr. Fenn's March 25 letter, Dr. Fenn signed on the line designated for the federal "Grantee/Contractor Official" as John B. Fenn of Yale University. Since the Court finds that the NIH confirmed Yale's desire to retain rights to the '538 patent prior to this date and thus never granted such rights to Dr. Fenn, it assumes that Dr. Fenn's signature was construed as that of an official of grantee Yale and not as grantee in his own right. The Court does not reach the issue of whether Fenn attempted to intentionally misrepresent his status to the NIH.

5. This letter was introduced at trial as defendant's exhibit 48.

6. This letter was introduced at trial as defendant's exhibit 86 and is referenced in plaintiff's motion to dismiss.

7. This letter was introduced at trial as defendant's exhibit 88 and is referenced in plaintiff's motion to dismiss.

8. The Court, however, notes that Dr. Fenn wrote a letter to the NIH on January 29, 1993, in which he stated, "Under the circumstances I have retained title to the patent...." This letter, of course, precedes the March 1993 correspondence between Yale and the NIH regarding the status of the '538 patent. Dr. Fenn's January 29, 1993 letter was introduced at trial as plaintiff's exhibit 89 and is referenced in plaintiff's motion to dismiss.

### C. Preemption

■ Dr. Fenn also argues that even if the NIH did not determine that he retains the rights to the '538 patent, Yale's state law counterclaims for conversion, fraud, breach of contract, and civil theft nonetheless are preempted by the Bayh–Dole Act.

■ Under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, federal law is "the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the contrary notwithstanding." To the extent that state laws conflict with federal laws, the state statutes are "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). It is presumed, however, that "Congress does not 'cavalierly' preempt state law causes of action, for 'the States are independent sovereigns in our federal system.'" *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1332 (Fed.Cir.1998) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Due to this presumption, state laws are not preempted unless preemption is "the clear and manifest purpose of Congress," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), and preemption analysis considers Congressional intent to be its "ultimate touchstone." *Medtronic*, 518 U.S. at 485, 116 S.Ct. 2240.

■ State law preemption may take one of three forms. Explicit preemption lies when an act of Congress expressly reserves federal supremacy over the subject matter. *See, e.g., Barnett Bank, N.A., v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 530–31, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977). The Bayh–Dole Act does not contain any such express language, and the Court thus finds that the Act does not preempt state law explicitly.

The second form of preemption is implied or field preemption, which occurs either when a federal regulatory scheme is enacted that is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (quoting *Rice*, 331 U.S. at 230, 67 S.Ct. 1146), or when federal legislation "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230, 67 S.Ct. 1146.

Third and finally, conflict preemption arises when a state law actually conflicts with federal law such that it is impossible for a private party to comply with both sets of requirements. *See, e.g., Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). Even where there is no stark conflict between state and federal laws, state law nonetheless may be preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

Dr. Fenn moves to dismiss Yale's counterclaims because "they are based upon conduct that is governed by federal patent law as embodied by the Bayh–Dole Act." Reply in Further Support of Plaintiff Fenn's Motion to Dismiss Yale's Counterclaims and Affirmative Defenses [Doc. # 446] at 5. Specifically, Dr. Fenn alleges that in order for Yale to prevail on its counterclaims, the Court must determine that Yale is the rightful owner of the '538

patent, a determination that is "solely within the discretionary authority of the NIH pursuant to the Bayh–Dole Act." *Id.* at 6. Nothing in the Bayh–Dole Act, however, expressly or impliedly preempts the state law counterclaims alleged by Yale.

Despite the presence of federal patent laws, states are not precluded from enforcing complementary laws that may involve patent issues: "Both the law of unfair competition and state trade secret law have coexisted harmoniously with federal patent protection for almost 200 years, and Congress has given no indication that their operation is inconsistent with the operation of the federal patent laws." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989); *see also Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) ("Commercial agreements traditionally are the domain of state law. State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable...."); *Regents of the Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1118 (Fed.Cir.2003) ("State law governs contractual obligations and transfers of property rights, including those relating to patents.").

■ More specifically, determination of patent ownership is a matter left to the states. "[A]lthough a cause of action for patent infringement is governed exclusively by federal law, the issue of ownership of patents is governed by state law." *Moss v. Moss Tubes, Inc.*, 1997 WL 727611, *3, 1997 U.S. Dist LEXIS 13352, *7–8 (N.D.N.Y. Aug. 21, 1997); *see also Goldwasser v. Smith Corona Corp.*, 817 F.Supp. 263, 275 (D.Conn.1993) ("There is no dispute that determination of patent ownership is a question of state law...."); *Great Lakes Press Corp. v. Froom*, 695 F.Supp. 1440, 1445 (W.D.N.Y.1987)

("[W]hether [employee] Froom had a legal duty to assign the patents to [employer] Rendoll, is governed by state law concerning the ownership of patents in the employment context.").

The federal patent regulatory scheme does not preclude state law causes of action that turn on a determination of patent ownership, since such determinations are acknowledged as also resting on state law. Nor does state law appear to conflict with or obstruct "the full purposes and objectives" of the Bayh–Dole Act. *Hines*, 312 U.S. at 67, 61 S.Ct. 399. Congress recorded the following policies and objectives when passing the Bayh–Dole Act:

> ... to use the patent system to promote the utilization of inventions arising from federally supported research or development; to encourage maximum participation of small business firms in federally supported research and development efforts; to promote collaboration between commercial concerns and nonprofit organizations, including universities; to ensure that inventions made by nonprofit organizations and small business firms are used in a manner to promote free competition and enterprise without unduly encumbering future research and discovery; to promote the commercialization and public availability of inventions made in the United States by United States industry and labor; to ensure that the Government obtains sufficient rights in federally supported inventions to meet the needs of the Government and protect the public against nonuse or unreasonable use of inventions; and to minimize the costs of administering policies in this area.

35 U.S.C. § 200. This list suggests that the primary purpose of the Bayh–Dole Act is to regulate relationships of small business and nonprofit grantees with the Gov-

ernment, not between grantees and the inventors who work for them. *See also Platzer v. Sloan–Kettering Inst. for Cancer Research,* 787 F.Supp. 360, 364–65 (S.D.N.Y.1992) ("A review of the legislative history does not suggest that the Bayh–Dole Act was enacted for the benefit of research scientists .... the intended beneficiaries of the Bayh–Dole Act are the institutions themselves and the government.") Deciding Yale's state law counterclaims against Dr. Fenn for conversion and civil theft disturbs neither the objectives of the patent system generally nor the Bayh–Dole Act specifically.

A district court adjudicating a dispute similar to that between Dr. Fenn and Yale also held that the Bayh–Dole Act does not preempt state law counterclaims. In *Gen–Probe Inc. v. Ctr. for Neurologic Study,* 853 F.Supp. 1215 (S.D.Cal.1993), the defendant Center for Neurologic Study ("Center") filed a counterclaim alleging breach of contract and cause for a constructive trust regarding inventions that a Gen–Probe scientist had conceived or reduced to practice while in the defendant center's employ. The Center specifically alleged that the plaintiff scientist had violated 35 U.S.C. § 202's mandate that government contractors disclose subject inventions developed under federal grants "within a reasonable time," and had breached the funding agreement that the Center signed with the federal government. *Id.* at 1217.

The district court in *Gen–Probe* dismissed both counterclaims pursuant to Fed.R.Civ.P. 12(b)(6). On the defendant's first counterclaim, the court found that because the Bayh–Dole Act did not create a private right of action, the defendant lacked standing to enforce the provisions of § 202. The defendant's second counterclaim for breach of contract was dismissed because the plaintiff scientist was not a contracting party to the agreements between the Center and the federal agencies from whom it received funding. Notably, however, the district court did not find that federal patent law automatically preempted such state law counterclaims: "The court acknowledges that Defendant would still state a claim for relief if its counterclaim alleged the existence of *any* written agreement between [plaintiff scientist] and Defendants which created a contractual duty of governed ownership rights." *Id.* at 1219; *see also Univ. of Colorado Found., v. Am. Cyanamid Co.,* 216 F.Supp.2d 1188, 1203–07 (D.Colo.2002), *aff'd,* 342 F.3d 1298 (Fed.Cir.2003) (holding defendant liable, in patent case not arising under the Bayh–Dole Act, on state law claims of fraud and unjust enrichment for appropriation and patenting of plaintiff university's invention).

Therefore, the Court finds that federal patent law does not preclude the counterclaims at issue here. It is well-settled that determination of patent ownership is a matter of state law. Even when patents are the subject of the dispute, contractual and unfair competition claims also remain the province of the states, and federal district courts frequently apply state law to adjudicate such claims. Furthermore, nothing in the language of the Bayh–Dole Act suggests that it expressly or impliedly preempts such claims. The Bayh–Dole Act was designed to support federally funded research and to regulate relationships between the federal government and its small business and nonprofit contractors. Entertaining the counterclaims in the instant case neither conflicts with the provisions of the Bayh–Dole Act nor frustrates Congress' stated objectives in enacting the legislation.

## IV. Conclusion

For the above reasons, Plaintiff's Motion to Dismiss Yale's Counterclaims and Affir-

mative Defenses [Doc. # 438] is DENIED. The Court will rule on Yale's outstanding counterclaims in a separate order.