ALGONQUIN GAS TRANSMISSION COMPANY *v.* ZONING BOARD OF APPEALS OF THE CITY OF MERIDEN

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, JS.

Argued October 7—decided November 30, 1971

*Morton H. Greenblatt,* assistant corporation counsel, for the appellant (defendant).

*Walter F. Torrance, Jr.,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff, the Algonquin Gas Transmission Company, hereinafter referred to as Algonquin, is a pipeline company authorized under General Statutes § 16-263 to construct and operate pipelines, compressor stations, appliances and other appurtenant equipment within the state of Connecti-

cut. Although not admitted in its answer, the defendant zoning board of appeals for the city of Meriden, hereinafter called the board, acknowledges, in its brief, that Algonquin is a public service company. General Statutes § 16-1 specifically defines a public service company as including a pipeline company and § 16-272 establishes the jurisdiction of the public utilities commission over pipeline companies.

In connection with the operation of the pipeline system, Algonquin is in the process of constructing a microwave communication system from New Jersey to Massachusetts to monitor the flow of natural gas for increased safety and efficiency.

Algonquin applied to the building inspector of the city of Meriden for a building permit to construct a microwave tower and a small instrument building on its property, situated in a R-R residential zoning district. West Peak is the site proposed for the tower, where presently are located two commercial radio broadcasting towers, transmitting equipment, numerous other broadcasting towers and microwave relay equipment of the Southern New England Telephone Company. The application was denied. Algonquin appealed to the board, which also denied the application. Algonquin then appealed to the Court of Common Pleas, where the appeal was sustained on the ground that the construction is exempt from municipal zoning regulations under General Statutes §§ 16-235 and 16-263. From the judgment rendered, the board appealed to this court on two grounds: (1) that § 16-235 does not exempt pipeline facilities from zoning regulations; and (2) if § 16-235 does so exempt, the proposed facility is not "other appurtenant equipment" within the meaning of § 16-263.

The pleadings and the proceedings before the board comprise the record. It is mentioned in the

plaintiff's brief that some testimony was taken at the hearing before the lower court. As no finding was made relative to this evidence and such evidence is not contained in the appendices to the briefs of either party, it is not considered.

Before the board and in the Court of Common Pleas, Algonquin argued that it was entitled to a building permit on three grounds. The trial court found, in its judgment, that Algonquin was exempt from the zoning regulations and made no mention of the two other grounds pressed by the plaintiff. The memorandum of decision indicates that, as the ground of exemption was dispositive of the case, the two other grounds were not considered. Because the court's judgment is upheld, we need not remand the case for a determination of the other two grounds.

In determining the plaintiff's claim of exemption, the trial court relied principally on *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 103 A.2d 535. It found that the microwave tower and instrument building are equipment appurtenant to the plaintiff's pipeline and, therefore, are exempt from the Meriden zoning regulations under § 16-235.

In *Jennings* v. *Connecticut Light & Power Co.*, supra, the legislative history of § 16-235 was reviewed and its phraseology examined in relation to its history and prior amendments. The *Jennings* case held that § 16-235 expressed a legislative intent (1) that local zoning authorities act as special agencies of the state only to determine the location of specifically named public service company facilities, to wit, a steam plant, gas plant, gas tank or holder, water tank or electric substation of any public service company; and (2) that the public utilities commission exercise exclusive authority

over the location of all other structures or equipment of public service companies. *Connecticut Light & Power Co.* v. *Costello,* 161 Conn. 430, 443, 288 A.2d 415; *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 231, 158 A.2d 742; *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 248, 140 A.2d 874. Thus, the public utilities commission has such authority unless, of course, it is superseded by other statutory enactments.

The board does not take issue with the holding in the *Jennings* case but claims that a natural gas pipeline company does not fall within the provisions of § 16-235. In support of its argument, the board points out that § 16-235 is in chapter 283 of the General Statutes, entitled "Telegraph, Telephone, Illuminating, Power and Water Companies," while the sections regulating pipeline companies are in chapter 284, entitled "Natural Gas Pipelines." The board further claims that the enactment of § 16-277[1] expresses an intent that, except for those sections mentioned therein, no section not included in chapter 284 would apply to pipeline companies. Section 16-235 is not mentioned in § 16-277.

It is true that, prior to 1935, § 5646 of the Revision of 1949, the predecessor to General Statutes § 16-235, related only to transmission lines, equipment and structures connected therewith. In 1935, however, the legislature added: "[B]ut no authority granted to any city or borough or a town planning, zoning, building, gas, water or electrical board, commission or committee created under authority of the general statutes or heretofore created by virtue of any

---

[1] "[General Statutes] Sec. 16-277. OTHER APPLICABLE STATUTES. The provisions of sections 16-7 to 16-10, inclusive, 16-17, 16-25, 16-35 to 16-40, inclusive, 16-229 to 16-231, inclusive, and 53-124 shall apply to any company constructing or operating a natural gas pipeline."

special act, shall be construed to apply to so much of the operations, plant, building, structures or equipment of any public service company as is under the jurisdiction of the public utilities commission, but such board, commission or committee, if it have the power to regulate and restrict the location of structures, trades, industries and business, may regulate and restrict the proposed location of any steam plant, gas plant, gas tank or holder, water tank or electric substation of any public service company." Cum. Sup. 1935, § 1420c.

It is clear that this amendment enlarged the scope of what is now § 16-235 to include not only electric power companies but "any public service company." Except with respect to the location of facilities expressly enumerated, the legislature intended local authority to give way to statewide authority in a matter of more than local concern. *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 660, 103 A.2d 535.

The 1935 amendment uses clear, direct and definite language; its provisions are intended to affect all public service companies. Section 16-1, as indicated above, defines "public service company" as including pipeline companies. That these companies are not listed in the heading of the subdivision in which the statute is found will not govern in the face of the unambiguous language of the statute.

"There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174; *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694; *Jennings* v. *Connecticut Light & Power Co.,* supra, 665. Chapters 283 and 284 of the General Statutes are both sub-

divisions of title 16—Public Service Companies. Where there is ambiguity in the wording of a statute, the title of the legislation is an aid to statutory construction. *Jennings* v. *Connecticut Light & Power Co.*, supra, 666; *Baker* v. *Baningoso*, 134 Conn. 382, 387, 58 A.2d 5. But if the language is clear and not subject to interpretation, titles are of less significance. *State* v. *Mele*, 125 Conn. 210, 213, 4 A.2d 336; *Root* v. *New Britain Gas Light Co.*, 91 Conn. 134, 140, 99 A. 559. The same reasoning is applicable to chapter subdivisions. Thus, the heading of a subdivision is not an element proper for consideration in the interpretation of a statute unless the provision under review is of doubtful meaning. Further, a subdivision heading does not restrict the scope of an explicitly worded statute to the body of the subdivision to which the heading is a prefix. *Mad River Co.* v. *Wolcott*, 137 Conn. 680, 688, 81 A.2d 119; note, 37 A.L.R. 927, 1086; 50 Am. Jur., Statutes, § 315.

To adopt the reasoning of the board is to say that local zoning authorities should find the scope of their power to govern public service companies in the chapter heading of the statute instead of in the statute itself. It need hardly be said that we do not find such an argument persuasive. Neither are we persuaded by the argument that the specific and certain language of § 16-235 is obviated by the absence of mention of that section in the 1951 enactment of § 16-277. This is especially true when § 16-277 is only a reference statute and has no words of restriction or exclusion. The only effect of including other statutes therein is to avoid encumbering the statute books by unnecessary repetition. See 2 Sutherland, Statutory Construction (3d Ed.) § 5208, pp. 549–50.

The language of § 16-235 is too clear, direct and specific to permit this court to hold that the § 16-235 exemption from local zoning authority should be interpreted to apply only to those public service companies listed in the title of chapter 283 and those mentioned in the statutory regulations which specifically incorporate the section.

Section 16-263 grants authority to natural gas pipeline companies, holding a certificate of public convenience and necessity issued under the Federal Natural Gas Act, to operate pipelines and take and use lands "as are necessary" for the construction, operation, maintenance and alteration of pipelines and the installation of compressor stations, "appliances and other appurtenant equipment." The board claims that the construction of a microwave tower and instrument building does not fall within the classifications of the statute because they are not "appliances" or "appurtenant" equipment.

By the terms of the statute, all land necessary for the operation and maintenance of the pipeline may be condemned for use by the pipeline company. " 'Necessary,' in legislative Acts according the right of eminent domain, does not mean an absolute or indispensable necessity, but only that the taking provided for is reasonably necessary." *New Haven Water Co.* v. *Russell,* 86 Conn. 361, 369, 85 A. 636; *West Hartford* v. *Talcott,* 138 Conn. 82, 91, 82 A.2d 351; see *Bryan* v. *Branford,* 50 Conn. 246, 253. The board in no way attacks the reasonable necessity for the microwave communication system; in fact, it admits by its answer that this communication system will help to assure the safe and efficient operation of the pipeline system.

The board claims that Algonquin cannot build a microwave tower and instrument building because

they are not an "appliance or other appurtenant equipment." There is no force to that assertion. Algonquin's power to take land necessary for operating pipelines would allow the building of a communication tower and instrument building necessary to operation, without respect to its being an "appliance" or "appurtenant equipment." If the statute authorizes the condemnation of land to build these structures as necessary and incident to the proper operation of a pipeline, it makes no sense to say that the legislative intent was not to allow their erection. It would be absurd to construe a statute as not allowing a use of land for which it allows condemnation.

Further, the microwave communication system is an appliance which is appurtenant equipment. "Appliance" is a very broad term, frequently defined as "everything applied or used as a means to an end," and is "something applied or used directly or adapted to accomplishment of purpose; an instrumental means, aid or appurtenance; an apparatus or device." Words & Phrases, Appliance, p. 383; see Ballentine, Law Dictionary (3d Ed.). Construing a statute conferring the right of eminent domain on companies constructing "pipelines and appliances for the conveying and distribution" of gas, the Mississippi Supreme Court specifically allowed a pipeline company to condemn land to erect telephone and telegraph lines. That court held such lines to be "appliances" within the meaning of the statute. *Gandy* v. *Public Service Corporation*, 163 Miss. 187, 198, 140 So. 687.

There is no question that such equipment is appurtenant. An appurtenance is something which belongs to another thing. See Words & Phrases, Appurtenance. It is an apt term for detached apparatus

which is built as an adjunct to a structure, to further its convenient use. *Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 A. 327.

Property law concepts of "appurtenant" should not be allowed to confuse the meaning of the term when it is used in other contexts. Even in property law, however, the term does not require that something be annexed, joined, or attached to be appurtenant. *Waterbury Lumber & Coal Co.* v. *Asterchinsky,* 87 Conn. 316, 320, 87 A. 739; see *Graham* v. *Walker,* 78 Conn. 130, 61 A. 98. The term denotes a connection between two objects such that one is incident to the other. Such a connection plainly exists between a communication system reasonably necessary for the safe and efficient transmission of natural gas and the pipelines. There is no evidence in the record that Algonquin will use it for any purpose other than to monitor its pipeline. In short, it will have no use independent of, or apart from, its use in connection with the pipeline. In such a case it may properly be said that the system is appurtenant to the pipeline. See *More* v. *Indiana & Michigan Electric Co.,* 229 Ind. 309, 313, 95 N.E.2d 210, in which the Indiana Supreme Court held that the erection of a telephone line for an electric company's own use was incidental to its operation as a power company.

The erection and operation of a microwave communication system which is to be used for the transmission of information concerning the flow of natural gas in pipeline systems are matters within the jurisdiction of the public utilities commission and not matters for regulation by local zoning authorities.

There is no error.

In this opinion the other judges concurred.