******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

## SACK PROPERTIES, LLC *v.* MARTEL REAL ESTATE, LLC, ET AL.
### (AC 41499)

Prescott, Elgo and Bishop, Js.

*Syllabus*

The plaintiff, the owner of lots 1 and 3 located in a three lot commercial subdivision, brought this action for, inter alia, quiet title and a declaratory judgment related to a drainage easement over lot 2 in the subdivision, which was owned by the defendant M Co. In 1978, the owner of the subdivision, B, had filed a revised map of the subdivision showing a drainage right-of-way, which commenced on the easterly line of lot 3, then down the southerly line of lot 1 and northerly line of lot 2, until it ran in its entirety down the northeast corner of lot 2. The stormwater runoff passed under the easement area through a subsurface concrete pipe. In 1984, B conveyed all three lots to I Co., which, in 2003, conveyed lot 2 back to B and conveyed lots 1 and 3 to the plaintiff. The deed conveying lot 2 to B provided that the premises were subject to a drainage right-of-way along the northerly line of lot 2 but did not state who enjoyed that right-of-way. The deed conveying lots 1 and 3 to the plaintiff provided that they were conveyed together with a drainage easement across lots 1 and 2. Both deeds provided that the property was transferred with the appurtenances thereof. In 2007, B conveyed lot 2 to M Co., and that deed provided that only lot 1 enjoyed the right-of-way along lot 2. In 2013, M Co. connected to the pipe to provide additional drainage to its property. Following a trial to the court, the trial court rendered judgment in part in favor of M Co. on the plaintiff's claims for quiet title and trespass, and on its claim that M Co. overburdened its right to use the drainage easement. On the plaintiff's appeal to this court, *held:*

1. The plaintiff could not prevail in its claim that the trial court improperly rejected its quiet title and trespass claims and found that the plaintiff failed to prove that it exclusively owned the pipe through which its drainage ran: although the plaintiff claimed that it introduced evidence of ownership through the deeds and that the court neglected to consider that claim, it could not reasonably be disputed that the court carefully considered the evidence on which the plaintiff based its claim and rejected it, as the deeds relied on by the plaintiff were admitted into evidence, transcripts of the trial revealed extensive testimony and argument relating to the language of the deeds, the court instructed the parties to file posttrial briefs addressing the deeds and their significance to the plaintiff's claims, the court allowed the parties to argue their positions to the court and during argument the court discussed with counsel its concerns with and understanding of the evidence before it, and, therefore, the court's statement that the plaintiff presented "no evidence" of exclusive ownership constituted a determination that it was not persuaded by the plaintiff's evidence, not an erroneous finding that the plaintiff had not presented any evidence at all; moreover, the trial court's finding that the plaintiff failed to prove exclusive ownership of the pipe through which its easement runs was not clearly erroneous, as the plaintiff claimed exclusive ownership of the pipe on the basis of the deeds relating to the properties, which did not contain any reference to the pipe at issue, and although it was clear from the language of the deed conveying lots 1 and 3 to the plaintiff that the drainage easement over lot 2 was an appurtenance of lots 1 and 3, the plaintiff did not introduce evidence that the pipe itself, particularly that portion underneath lot 2, was an appurtenance to lots 1 and 3, as the language in the pertinent deeds referring to appurtenances pertained to appurtenances on the lot being conveyed, not appurtenances on the land over which the dominant estate enjoyed its easement and, thus, while the portion of the pipe that went through lot 1 may be considered an appurtenance to lot 1, the plaintiff cited no legal authority supporting its claim that a certain habendum clause of the deed by which it obtained title to lot 1 also conveyed to it exclusive ownership of the portion of the pipe

that went through lot 2.

2. The trial court's finding that the plaintiff failed to prove that M Co.'s use of the pipe to drain excess stormwater overburdened the drainage system was not clearly erroneous; in resolving this claim, the court credited the testimony of M Co.'s expert over that of the plaintiff's expert, and that credibility determination was within the exclusive province of the trial court to make.

Argued March 11—officially released July 23, 2019

*Procedural History*

Action seeking, inter alia, to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Moukawsher, J.*; judgment in part for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, with whom, on the brief, was *John M. Wolfson*, for the appellant (plaintiff).

*Edward W. Gasser*, with whom, on the brief, was *Margot E. Vanriel*, for the appellee (named defendant).

*Opinion*

BISHOP, J. In this action involving three lots of commercial property and a drainage easement enjoyed by the plaintiff, Sack Properties, LLC, the owner of two of those lots, over the lot owned by the defendant Martel Real Estate, LLC,[1] the plaintiff challenges the judgment of the trial court, rendered after a court trial, in part in favor of the defendant.[2] On appeal, the plaintiff claims that the trial court improperly (1) rejected its quiet title and trespass claims on the ground that it failed to prove that it exclusively owned the pipe through which its drainage easement ran, and (2) found that it failed to prove that the defendant had overburdened its right to use the drainage easement. We disagree, and, accordingly, affirm the judgment of the trial court.[3]

The following relevant facts are undisputed. In 1976, the Town Planning Commission of Canton approved a three lot subdivision plan titled, "Powder Mill Industrial Park," submitted by the then-owner of the property, Henry Bahre. In 1978, Bahre filed a revised map of the subdivision, as required by the town, showing a drainage right-of-way, which commenced on the easterly line of lot 3, then down the southerly line of lot 1 and northerly line of lot 2, until it ran in its entirety down the northeast corner of lot 2, and went under Powder Mill Road, before it dumped into the Farmington River. The stormwater runoff passes under the easement area by way of a 24 inch subsurface concrete pipe.

In 1984, Bahre conveyed all three lots to Inertia Dynamics, Inc. The deed conveying lot 1 provided, inter alia: "Said premises are subject to a twenty (20') foot drainage right-of-way along the southeasterly boundary of the lot . . ." The deed conveying lots 2 and 3 provided, inter alia: "Lot No. 2 is subject to a drainage right-of-way along the northerly line of [l]ot No. 2."

Subsequently, on April 30, 2003, Inertia Dynamics, Inc. conveyed lot 2 back to Bahre. The deed conveying lot 2 to Bahre provided that the "premises are subject to a drainage right-of-way along the northerly line of [l]ot No. 2." It did not state who enjoyed that right-of-way. On the same day, Inertia Dynamics, Inc., conveyed lots 1 and 3 to the plaintiff. The deed conveying lots 1 and 3 to the plaintiff provided that they were "conveyed together with a drainage easement across [l]ots 1 and 2 . . . ." Both of the 2003 deeds provided that the property was being transferred "with the appurtenances thereof . . . ." The deed conveying lot 2 to Bahre was recorded on the land records before the deed conveying lots 1 and 3 to the plaintiff.

In 2005, the plaintiff, at its sole expense, installed and/or made improvements to the subsurface drainage structures within the drainage easement area to service its drainage needs.

On April 13, 2007, Bahre conveyed lot 2 to the defendant. This deed also referenced the drainage right-of-way, but provided that only lot 1 enjoyed that right-of-way along the northerly line of lot 2. In 2013, the defendant, in developing its property, connected to the 24 inch pipe to provide additional drainage from its property.

The plaintiff filed this action by way of a seven count complaint, alleging a quiet title action pursuant to General Statutes § 47-31, an action for declaratory judgment pursuant to General Statutes § 52-29, interference with its easement, trespass, nuisance, unjust enrichment, and quantum meruit. The crux of the plaintiff's claims is that it exclusively owns both the right to enjoy the drainage easement—over lot 2, from both lots 1 and 3—and the 24 inch concrete pipe that services that easement, and that the defendant's connection to that pipe has overburdened the drainage system to the plaintiff's detriment.

Following a court trial, the trial court issued a memorandum of decision dated March 8, 2018, finding in the plaintiff's favor that it enjoyed the drainage easement not only from lot 1, which was not disputed by the defendant, but also from lot 3. In ruling on the plaintiff's additional claims, the court reasoned: "[The plaintiff] has [not] proved it owned the pipe. The pipe was there when [the plaintiff] bought lot 1. The water was flowing through it. But [the plaintiff] did [not] prove who built the pipe or prove that its entire length was conveyed to [the plaintiff] when it bought lot 1. Remember, this was one lot and it [is] possible the developer intended the pipe on lot 2 to be owned by the lot 2 owner with a right to use it by the lot 1 owner. Indeed, the evidence shows that the pipe had the stub of a pipe attached to it pointed in the direction of the rest of lot 2. It sits in a way that implies it was there for lot 2 to connect with. In fact, while [the defendant] replaced the pipe stub with a new pipe, [it] connected to the concrete drainage pipe at the very spot where the concrete stub had been installed. There is no evidence showing [that the plaintiff] exclusively owns the pipe. Therefore, [the plaintiff] has not met its burden to prove ownership and trespass."

The court also rejected the plaintiff's claim that the defendant interfered with its easement. The court reasoned: "[The plaintiff] has [not] proved its right to drain is impaired—that its easement over lot 2 is surcharged by excessive drainage into the pipe. [The defendant's] lot 2 drainage system only uses the pipe as an overflow system. Its main system is two infiltration basins—sand pits encircled by a permanent stone barrier. At one side of the property this is fed by an elongated swale or trench. In both locations the basins have a raised concrete outlet structure with a grate across the top of it. In particularly heavy rains water would flow into the

grate and openings on the elevations of the structure. The credible testimony of Kevin Clark, the engineer who designed it, shows that the pipe might get some use in a two year storm—a storm that has a 25 [percent] chance of happening in any given year. But the pipe most likely would [not] get any use in a typical rain storm of an inch or less. This discredits the testimony and calculations of [the plaintiff]'s expert, James Cassidy. [Cassidy's calculations] depended on both lots 1 and 3 draining into the pipe when lot 3 does [not] yet and may never drain into it, and they also depend on lot 3 being developed to virtually the maximum extent possible with 50 [percent] of the lot being covered with an impervious material that would dramatically increase the amount of drainage from lot 3 and into the pipe. Since even [the plaintiff]'s wrong-headed and hypothetical assumptions showed the pipe barely over capacity, there can be little doubt that Clark's more credible assumptions show a minimal impact on the pipe capacity.

"This minimal impact means the system likely has little effect on [the plaintiff]'s anti-pollution device. This is especially the case in light of Martel's testimony that any water that reached it would be part of a lot 2 system that includes a 1500 gallon oil and water separator that removes many pollutants long before the water even reaches [the plaintiff]'s anti-pollution device.

"[The plaintiff] has [not] proved that connecting the lot 2 system to the pipe has had or will have any negative effect on its pollution control device or that it surcharges [the plaintiff]'s drainage easement."

The court, therefore, found in favor of the defendant on the remainder of the plaintiff's claims. This appeal followed.

This court has held that "[w]hether a disputed parcel of land [or a portion of that land] should be included in one or another chain of title is a question of fact for the court to decide." *Porter* v. *Morrill*, 108 Conn. App. 652, 663, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008). Similarly, the determination of whether one has interfered with the use of an easement is a question of fact. *Kelly* v. *Ivler*, 187 Conn. 31, 49, 450 A.2d 817 (1982). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"In applying the clearly erroneous standard of review, [a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a

different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court. . . .

"[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *FirstLight Hydro Generating Co. v. Stewart*, 328 Conn. 668, 679–80, 182 A.3d 67 (2018). With these principles in mind, we address the plaintiff's claims on appeal in turn.

I

The plaintiff first claims that the trial court improperly rejected its quiet title and trespass claims on the ground that it failed to prove that it exclusively owns the 24 inch pipe through which its drainage easement runs under lot 2. The plaintiff argues that the trial court erroneously found that there was "no evidence" of exclusive ownership and that it failed to prove exclusive ownership. We are not persuaded.

We first address the plaintiff's claim that the trial court erroneously found that "[t]here is no evidence showing [the plaintiff] exclusively owns the pipe." The plaintiff contends that it did, in fact, introduce evidence of ownership, specifically, the deeds, and, therefore, that the trial court's statement that there was "no evidence" was erroneous and that the court erred in failing to consider the evidence before it. In support of this argument, the plaintiff cites to our Supreme Court's recent decision in *In re Jacob W.*, 330 Conn. 744, 200 A.3d 1091 (2019). Our Supreme Court explained, in that termination of parental rights case, that "[t]he trial court . . . did not provide any analysis as to the second prong of [General Statutes] § 45a-717 (g) (2) (C). Instead, the court grounded its decision on the conclusory finding that '[t]here was no evidence presented by the petitioner at trial that would support a claim that additional time to reestablish a relationship with the children would be detrimental [to their best interests].' That finding cannot be reconciled with the record, which reveals that there *was* evidence presented that was relevant to this question. . . .

"In arriving at its finding that the petitioner had presented no evidence that it would be detrimental to allow the respondent more time to develop or reestablish a relationship with the children, the trial court did not accord any effect to evidence that had been presented

at trial that was relevant to that precise question." (Emphasis in original.) Id., 770–71.

Our Supreme Court construed the trial court's finding of "no evidence" as "expressly declining to consider . . . relevant evidence." Id., 771–72. Our Supreme Court concluded: "In light of the abundance of evidence in the record contrary to the trial court's statement that there was *no evidence* presented that it would be detrimental to the best interests of the children to allow additional time for the respondent to develop a relationship with them, we are left with a firm conviction that a mistake has been made and, therefore, conclude that the trial court's finding was clearly erroneous." Id., 774.

Unlike in *In re Jacob W.*, our review of the record in the present case does not leave us with a firm conviction that a mistake has been made. The plaintiff's argument that, "[b]ecause the trial court did not address the plain language of the deeds in its final, written analysis of the plaintiff's argument in this case, it is impossible to know whether the trial court considered and rejected the plaintiff's argument in reaching its final decision or whether the trial court simply neglected to consider the argument" is belied by the record before us. It cannot reasonably be disputed, given the entirety of the trial court record in this case, that the trial court carefully considered the evidence on which the plaintiff based its claim of ownership of the pipe and rejected it. All of the deeds relied on by the plaintiff in support of its claim of exclusive ownership of the pipe were admitted into evidence, and the transcripts of the trial reveal extensive testimony and argument relating to the language of the deeds. Not only was there extensive discussion and argument regarding the deeds among counsel and the court, but the court instructed the parties to file posttrial briefs specifically addressing the deeds and their significance to the plaintiff's claims.[4] Following the filing of these briefs, the trial court allowed the parties to argue their respective positions to the court. During that argument, the court discussed with counsel for both parties, its concerns with and understanding of the evidence before it. On the basis of our review of the record, which is replete with discourse between the court and the parties relating to the plaintiff's claims and the evidence that it had introduced in support of those claims, the plaintiff's argument that the court either neglected or forgot about its claim regarding the deeds is untenable. Moreover, "it is inevitable that the court considered other evidence not expressly identified in its decision. Rather, we presume that the trier considered *all* of the evidence in making its findings, and we review them only for clear error." *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 384, 112 A.3d 1 (2015). We thus conclude that the court's statement that the plaintiff presented "no evidence" of exclusive ownership constituted a determination that it was not persuaded by the plaintiff's evidence, not an errone-

ous finding that the plaintiff had not presented any evidence at all.

We also cannot conclude that the trial court's finding that the plaintiff failed to prove exclusive ownership of the pipe through which its easement runs was clearly erroneous. "It is well settled that [a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the rules authorized by the easement. . . . [T]he benefit of an easement . . . is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. . . . [E]asements are not ownership interests but rather privileges to use [the] land of another in [a] certain manner for [a] certain purpose . . . ." (Internal quotation marks omitted.) *Stefanoni v. Duncan*, 282 Conn. 686, 700, 923 A.2d 737 (2007).

Although it is undisputed that the plaintiff enjoys a drainage easement over lot 2, and the right to use the pipe that lies beneath its own lot and lot 2 to effectuate that drainage, it also claimed exclusive ownership of the entire pipe, as it stretches from lot 2 to lot 1, then back across lot 2, and under Powder Mill Road, until it empties into the Farmington River. The plaintiff bases its claim of exclusive ownership of the pipe on the deeds relating to the subject properties, particularly, the deed by which it acquired lots 1 and 3 from Inertia Dynamics, Inc. It is undisputed that neither that deed, nor any of the other deeds pertaining to the properties in this case, contain any reference to the pipe at issue. The sole language on which the plaintiff relies in support of its claim of exclusive ownership of the pipe is the habendum clause contained in the deed that provided that the lots 1 and 3 were transferred to the plaintiff with the "appurtenances thereof . . . ."[5]

"In considering what passes by a deed, appurtenances are things belonging to another thing as principal and which pass as incident to the principal thing. . . . The term 'appurtenance' passes nothing but the land and such things as belong thereto and are a part of the realty. . . . It is conveyed with the principal property. . . . Thus, an appurtenance is a right or privilege incidental to the property conveyed. . . . Appurtenances that pass are not limited to such as are absolutely necessary to the enjoyment of the property conveyed . . . but include such as are necessary to the full enjoyment thereof . . . and, a deed of property with 'appurtenances' conveys only what is appurtenant at the time of the conveyance." (Footnotes omitted.) 26A C.J.S., Deeds § 285.

In *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals*, 162 Conn. 50, 291 A.2d 204 (1971), our Supreme Court explained: "An appurtenance is . . . an apt term for detached apparatus which is built as an adjunct to a structure, to further its convenient use."

(Citation omitted.) Id., 57–58. Examples of appurtenances include "a right of way or other easement to land; an outhouse, barn, garden, or orchard, to a house or messuage." *Black's Law Dictionary* (6th Ed., 1990). "Appurtenances of a ship include whatever is on board a ship for the objects of the voyage and adventure in which she is engaged, belonging to her owner. Appurtenant is substantially the same in meaning as accessory, but it is more technically used in relation to property, and is the more appropriate word for a conveyance." *Black's Law Dictionary* (3rd Ed., 1933).

Here, although it is clear from the language of the deed conveying lots 1 and 3 to the plaintiff that the drainage easement over lot 2 is an appurtenance of lots 1 and 3, the plaintiff did not introduce any evidence that the pipe itself, particularly that portion of the pipe that lies beneath the surface of lot 2, is an appurtenance to lots 1 and 3. As the defendant aptly pointed out in argument before this court, the language in the pertinent deeds referring to appurtenances pertains to appurtenances on the lot that is being conveyed, not appurtenances on the land over which the dominant estate enjoys its easement. Thus, while the portion of the pipe that goes through lot 1 may be considered an appurtenance to lot 1, the plaintiff has cited to no legal authority, nor are we aware of any, that supports its claim that the habendum clause of the deed by which it obtained title to lot 1 also conveyed to it exclusive ownership of the portion of the pipe that goes through lot 2. To the contrary, the Appellate Court of Illinois has held that when real property is conveyed by deed, only those "buildings and appurtenances located *thereon* are likewise conveyed." (Emphasis added.) *McPeak v. Thorell*, 148 Ill.App.3d 430, 434, 101 Ill.Dec. 730, 499 N.E.2d 97 (1986). In other words, *McPeak* stands for the proposition that a sewer line is only an appurtenance to the property on which it is located.

The holding in *McPeak* underscores the evidentiary insufficiency of the plaintiff's claim of exclusive ownership of the pipe that runs beneath lot 2. Not only do the pertinent deeds in this case not reference the pipe, but the plaintiff did not introduce any evidence of the parties' intent at the time of the conveyance of lots 1 and 3 to convey exclusive ownership of the pipe to the plaintiff. The court was persuaded by other factors that weighed against the plaintiff's argument of exclusive ownership of the pipe, such as the existence of the stub of the pipe to which the defendant connected that pointed in the direction to lot 2. We thus conclude that the trial court's finding that the plaintiff failed to prove exclusive ownership of the pipe was not clearly erroneous.[6]

## II

The plaintiff also claims that the trial court erroneously determined that the defendant did not interfere

with its enjoyment of its easement over lot 2. The plaintiff claims that adding stormwater runoff from lot 2 to the pipe at issue overburdens the usable capacity of the pipe, to its detriment. In resolving this claim, the trial court credited the testimony of the defendant's expert over that of the plaintiff's expert. Because that credibility determination is within the exclusive province of the trial court, we cannot disturb it. See *State* v. *Montana*, 179 Conn. App. 261, 265–66, 178 A.3d 1119, cert. denied, 328 Conn. 911, 178 A.3d 1042 (2018). Accordingly, we cannot conclude that the court's determination that the plaintiff failed to prove that the defendant's use of the pipe to drain excess stormwater overburdened the drainage system was erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Thomaston Savings Bank, The U.S. Small Business Administration and Martel Transportation, LLC, are also defendants in this action. Because they have not participated in this appeal, any reference herein to the defendant is to Martel Real Estate, LLC.

[2] The plaintiff owns lots 1 and 3 of the property at issue. The court found in favor of the plaintiff on its claim that lot 3, in addition to lot 1, also enjoyed a drainage easement over the defendant's lot. The defendant has not challenged that determination.

[3] The court also found in favor of the defendant on the plaintiff's claims of nuisance, unjust enrichment and quantum meruit. The plaintiff has not challenged the court's judgment on those claims.

[4] Specifically, the trial court ordered posttrial briefs seeking "law on what appurtenances include, law on the sequence of conveyances . . . and law on the sequence of recording on the land records . . . ."

[5] The plaintiff also argues that the lack of a similar habendum clause in the deed conveying lot 2 to the defendant reflects an intent by Bahre that the owner of lots 1 and 3 would be the exclusive owner of the entire pipe. Although the deed by which Bahre conveyed lot 2 to the defendant was the only pertinent deed lacking a habendum clause, we disagree with the plaintiff that the absence of such language is conclusive proof of an intent by Bahre that the owner of lots 1 and 3 exclusively own the pipe. Because appurtenances regularly run with land as it is conveyed, regardless of the presence or lack of a habendum clause, and because the deeds were drafted by different lawyers and at different times, the trial court reasonably could have declined to afford any weight to the lack of a habendum clause in the deed by which the defendant obtained title to lot 2.

[6] Moreover, the defendant argued that, when Inertia Dynamics conveyed lot 2 back to Bahre, which occurred prior to Inertia conveying lots 1 and 3 to the plaintiff, the pipe on lot 2 went with that conveyance, and therefore could not have gone to the plaintiff with the subsequent conveyances of lots 1 and 3. In other words, Bahre acquired the pipe on lot 2 before the plaintiff acquired lots 1 and 3 and their appurtenances, so the pipe could not have been considered an appurtenance to lots 1 and 3 at the time of the conveyance to the plaintiff.